## Lyon *against* Marclay.

1 W   271
206   599

1 W   271
23 SC   ³562
,e 23 SC   ³563
Watts
1w   271
f38SC   ³260

Proof having been given that a declaration was made at a certain time and place, by a party; it is competent for the adverse party to prove, by another witness, that he was present, and did not hear it.

There must be an acknowledgement of an *existing* debt within six years, to prevent the operation of the statute of limitations.

Cases of trust, not to be reached or affected in equity by the statute of limitations, are those technical and continuing trusts, which are not at all cognizable at law, but fall within the proper, peculiar, and exclusive jurisdiction of courts of equity : it must be a direct trust, belonging exclusively to the jurisdiction of a court of equity, and the question must arise between the trustee and *cestui que trust.*

The court may, at any time, to prevent injustice, or for special reasons, permit a plea to be put in *nunc pro tunc;* and a plea *puis darrein continuance,* although a continuance has intervened.

A plea *puis darrein continuance* waives all former pleas.

In an action on the case for money had and received, a release, executed after suit brought, may be given in evidence upon the general issue.

The parol gift of a debt to another, to be recovered and held in trust for an illegitimate child, may be countermanded at any time before the trust is executed. And in an action by the *cestui que trust* against the trustee, to recover the money, a release by the donor to the trustee, executed after suit brought, may be given in evidence.

FROM the district court of *Lancaster* county.

In the court below, this was an action on the case, for money had and received, by *Jacob F. Marclay* and *Ann* his wife, against *Thomas Lyon's* executor.

*Elizabeth Lyon* had an illegitimate child, for which *Robert Hamilton* was indicted, convicted and sentenced. He gave a bond to the mother, conditioned for the payment of that part of the money which, by the terms of the sentence, was payable to her. A suit was also brought by *Elizabeth Lyon* against *Robert Hamilton,* for a breach of promise of marriage, in which a verdict and judgment were obtained for the plaintiff of 1000 pounds damages. *Elizabeth* assigned the bond, by indorsement on the back of it, to her father, *Thomas Lyon,* the defendant's testator, in trust for the use of the child of said *Elizabeth,* whose name was *Ann.* The judgment for the 1000 pounds, *Elizabeth* directed her father to recover for the same use. Both sums were recovered by *Thomas Lyon,* and loaned to different individuals ; he declaring, at the time, and also when he received it again, that it was for the use of *Ann,* the child of his daughter *Elizabeth.* This evidence was given by the plaintiffs, who were the said *Ann* and her husband, *Jacob F. Marclay ;* and to each part of it the defendant objected ; and the objections were overruled by the court, which formed several bills of exception.

The defendant offered to prove, by a witness, that he was present at one of the times that *Thomas Lyon* was alleged to have declared

that the money was for the use of *Ann*, and that he, the witness, did not hear any such conversation. This the plaintiff objected to, and the court overruled the evidence, and the defendant excepted.

The defendant also offered in evidence a release by *Elizabeth Lyon* to her father, *Thomas Lyon*, from the payment of the money for which this suit was brought; which she therein acknowledged she had received. This paper was dated after suit brought, and was objected to on that ground, and also that *Elizabeth Lyon* could not release a debt due to her daughter *Ann*. It was rejected, which was the subject of another bill of exceptions.

The defendant also contended that the statute of limitations was a bar to the plaintiff's recovery; the answer to which was, that it was such a case of trust that the statute was not applicable; and of this opinion was the court.

The opinions of the court, as contained in the several bills of exception, were assigned for errors.

*W. Hopkins* and *J. Hopkins*, for plaintiff in error.

The money for which the suit is brought belonged to the mother, and the proof of the appropriation of it by her amounts to nothing more than a declaration of her intention to give it to her child; an intention perfectly within her power, at all times, to change. It was a mere promise to give, wanting the essential quality of a delivery of possession, and, therefore, not binding. 2 *Kent's Comm.* 354. A parol promise to pay money as a gift, will not sustain an action. 7 *Johns. Rep.* 26; 2 *Desaussure* 79; 2 *Johns. Rep.* 52; and in 18 *Johns. Rep.* 145, it was held, that a note from a father to a son, at sixty days, without consideration, was not recoverable from the father's executors.

A gift of this kind is always revocable. 1 *Johns. Rep.* 55. And if it be so, it was important for us to show that it had been revoked. The plaintiffs having given in evidence the declarations of *Lyon*, to prove a gift; it was competent for us to give in evidence other declarations that there was no gift. The intention can only be shown by declarations. 1 *Phil. Ev.* 355. The plaintiffs claimed through *Lyon*, and, therefore, his declarations were evidence. 2 *Serg. & Rawle* 354; 1 *Dall.* 65. The sum of the plaintiff's evidence was the declarations or acknowledgements of the defendant's testator, that his daughter *Elizabeth* had made the gift: this would not bind her; and the court refused admission to evidence of her determination that there should be no such gift; her release was perfectly competent, and should have been received.

*Montgomery* and *Ellmaker*, for defendant in error.

It has not been pretended but that *choses in action*, or evidence of indebtedness, are the subjects of gift and transfer; and that such a gift or transfer, in consideration of natural love and affection, would be available. What, then, is this case? The mother, entitled to a

*chose in action,* declares her intention to give it to her minor daughter ; actually appoints a trustee to receive the gift for her, and delivers the possession, as far as the thing was susceptible of delivery ; permits him to proceed to the collection of the money, and to its investment ; and although this trustee continually declares the object of the trust, the mother never once denies it, until the *cestui que trust* seeks, by an action, for that which is hers ; and then, for the first time, the donor releases the trustee, for the purpose of defeating the *cestui que trust*—inveigling her into a suit, to cut·her off in the midst of it.     The release was executed after suit brought, which is an answer to its alleged competency.

The opinion of the Court was delivered by

Ross, J.—The declaration in this case contained two counts, one for work and labour done and performed by the said Anne, and the other for money had and received for her use while sole.    The defendant pleaded non assumpsit, and the statute of limitations, to which the plaintiff replied an assumption within six years.    It seems that Anne, the wife of the plaintiff below, was an illegitimate child of *Elizabeth Lyon,* daughter of the deceased *T. Lyon.*    She was born on the 29th of May 1799.    *Robert Hamilton* was her putative father.    He was indicted for the offence at August sessions 1799, and submitting to the court, was sentenced to pay a fine of twenty dollars for lying-in expenses, and ten shillings per week for seven years, from the 29th of May 1799, to *Elizabeth,* the mother, for the support of her·child *Anne.*    He gave a bond to *Elizabeth* in pursuance of the sentence, which bond she afterwards, to wit 20th of March 1802, assigned to her father, *T. Lyon,* in trust for the use of the child.    Judgment had been entered on this bond before the assignment some time in October 1799 ; and a *fieri facias* had issued under which two hundred and fifty acres of land had been levied on, an inquisition held, but no condemnation made.

*T. Lyon* also brought a suit against *Robert Hamilton,* for seducing and debauching his daughter *Elizabeth,* and on the 26th of April 1800 obtained a verdict and judgment for 100 pounds.    To August term 1799, *Elizabeth* brought a suit against him for a breach of promise of marriage, and obtained a judgment for 1000 pounds, and on the 24th of August 1801, she entered satisfaction on this judgment. One half of the 100 pounds and one half of the 1000 pounds was retained by *James Hopkins,* Esquire, for his fees and services in conducting the suits ; so that the amount actually received by·*T. Lyon* on his judgment was 50 pounds ; and the sum received by *Elizabeth* on her·judgment 500 pounds.    *Anne* married the plaintiff on the 27th of April 1824, being at that time about twenty-five years of age.    She was raised and supported by her maternal grandfather, *T. Lyon,* and continued to live with him until she married the plaintiff.    During all this time she was treated in the same manner as were the daughters of her respectable neighbours ; and when old

2 K

[Lyon v. Marclay.]

enough, she worked as other daughters of reputable and substantial farmers are in the habit of doing. From this statement it appears that she 'lived with her grandfather about seven years after she had attained the age of eighteen. A mass of parol testimony was given, in order to prove that *T. Lyon* held the different sums of money received on the judgments against *Robert Hamilton* in trust for *Anne.* That part of the evidence, which seemed to have much relation to the question trying, were his declarations made when he was offering to loan 600 pounds, or when he was receiving part of the moneys loaned, or endeavouring to secure the same. Thus it was proved, he said, "that he allowed the money to go to his daughter *Betsey's* child ;" and that he directed the loan to be made payable in gold or silver, and assigned as a reason for being more particular about it than about other money, that "it was the money he allowed for *Anne*—money for the little girl ;" again, it was proved, that he had declared that the 600 pounds should go, and *ought to go* to *Betsey's* child, though he did not say from whom the money had been received. . Many expressions similar to these were proved to have been made by *T. Lyon.* Much of the evidence given with those declarations was totally irrelevant, and ought not to have been admitted ; or if it were unavoidably received in hearing that which was really applicable to the case, the jury should have been instructed by the court that it was not evidence, and directed to pay no regard to it. Although in questions of secret trusts, or such as the trustee endeavours to avoid, a great latitude is allowed in the admission of testimony, and almost every species of acknowledgement, consistent with the principles of the law of evidence, may be admitted, in order to ferret out the truth, yet some testimony may be so vague, uncertain, and entirely foreign to the inquiry making, as to be calculated to deceive and mislead any mind, but particularly such as have not been well versed in the philosophy of evidence. Courts should never suffer evidence to be given to a jury, which would only tend to bury that which was calculated to elucidate the case under a mass of rubbish totally inapplicable to the points in issue. Even to the most experienced in the investigation of facts, it becomes excessively irksome and laborious, under such circumstances, to sift the wheat from the chaff, and determine as to what may or may not establish the fact proposed to be proved. These general observations will be found to apply to a great part of the evidence, which has been excepted to in this case. The questions were, whether *Thomas Lyon* was a trustee for *Ann*, and whether he held any money in trust for her at any time ? If he did : what money was it—how much—and from whom had he received it ? A great portion of the evidence, therefore, respecting the declaration of *T. Lyon* as to his loaning money, his fears of losing it, his getting it secured, his receiving it afterwards and entering satisfaction on mortgages given to secure the same, could not aid in the solution of these questions, particularly unaccompanied as they were with any thing done or

[Lyon v. Marclay.]

said by him, from which it might be inferred, that he held the same in trust for *Ann*.

I am unable to discover any legal ground for the rejection of the testimony of *N. Lightner*. He was offered to prove, that he had been present at the time that *T. Lyon* was represented to have said it was *Ann's* money; and also, that he was present when the bond and note were paid off, and that there was nothing said by *T. Lyon*, as to any part of the money belonging to *Ann*. It is a well known rule of evidence, that one affirmative witness, if credited, will outweigh several negative witnesses; because one man may see and hear many things, which another person present may not have seen or heard. The very existence, however, of the rule shows incontrovertibly, that negative testimony is legal, and therefore the court erred in rejecting the evidence of *N. Lightner*.

But was the statute of limitations, which was pleaded in this action, a bar to the plaintiff's recovery? I think it was, unless the plaintiff proved an assumption within six years; and *perhaps* the court would have been justified in excluding most of the plaintiff's evidence as to proof of acknowledgements made by the defendant, more than six years before the suit was brought. In order to prevent the statute being a bar, there must be an acknowledgement of an *existing* debt within six years. 2 *Penns. Rep.* 305, 306, and authors cited. It has not been contended, that the law is not so settled; but it is urged, that trusts stand on a different footing, and are exempt from the general rule of the law, and without the operation of the statute. "The sound rule," says Chancellor *Kent*, "established on the solid foundations of authority and policy, is, that the cases of trusts not to be reached or affected in equity by the statute of limitations, are those technical and continuing trusts, which are not at all cognisable at law, but fall within the proper, peculiar and exclusive jurisdiction of chancery." See 7 *Johns. Chan. Rep.* 100 *et seq.*, where the whole subject is examined, and see also the learned note of *Laussat* to *Fonblanque's Equity* 262, 263. But a person who receives money to be paid to another, or to be applied to a particular purpose, and does not pay it to the person, or apply it to the purpose intended, is a trustee and suable either in law or equity. Yet such cases are not without the operation of the statute of limitations under the *notion of a trust,* although they are cases of express and direct trusts. To exempt a trust from the bar of the statute, it must be, first, a direct trust; secondly, it must be of the kind belonging exclusively to the jurisdiction of a court of equity; and thirdly, the question must arise between the trustee and *cestui que trust.* Hence it has been decided, that the statute of limitations is a good plea to a suit in equity, brought to recover money collected by an attorney for the plaintiff, and not accounted for by him. *Kinney's Executors* v. *M'Clure,* 1 *Rand.* 284. So in *Johnson* v. *Humphreys,* 14 *Serg. & Rawle* 394, it was decided, that when a trustee holds adversely to his *cestui que trust,* the statute

[Lyon v. Marclay.]

begins to run.   I am satisfied from an examination of the authorities, that there is nothing in the present case which can exempt it from the operation of the statute of limitations ; and, therefore, the court erred in charging the jury, that the statute did not apply ; and they equally erred in leaving the law and the facts to the determination of the jury; for there was nothing proved, according to the evidence returned to this court, from which an express or implied assumption could be inferred.

Was the release of *Elizabeth* to *Thomas Lyon* properly rejected ? It is contended, that it was not evidence, because it appeared on its face to have been given after the suit was instituted.   The suit was commenced in April 1826, and the release was given in September 1826.   It was also argued, that it should have been pleaded *puis darrein continuance*, to have justified the court in the admission of it in evidence.   It is true, that such is the general rule ; but the court may at any time, to prevent injustice, or for special reasons, permit a plea to be put in *nunc pro tunc*, although a continuance has intervened.   4 *Serg. & Rawle* 238, and see 10 *Johns. Rep.* 161.   I apprehend, that whenever the pleas already entered are sufficient to entitle the party to the admission of the evidence, in case it existed before the bringing of the suit, it may be given in evidence without any additional plea, or a repetition of the same plea *puis darrein continuance*.   There is great hazard in a plea of *puis darrein continuance*, because it waives all former pleas.   It can only be safely entered, where it is a sufficient bar to the plaintiff's recovery.   In the case under consideration, could the defendant have safely abandoned the pleas of *non assumpsit*, and the statute of limitations ?   For this must have been the effect, if the release had been pleaded *puis darrein continuance*.   In 4 *Serg. & Rawle* 239, the present chief justice, in delivering the opinion of the court, said, " it is very certain, a plea *puis darrein continuance* waives all former pleas ; that the defendant must stand or fall by it ; and if put in issue, it forms the only subject of inquiry before the jury."   With this agrees *Buller's N. P.* 209. The question is therefore reduced to the inquiry, whether a release, obtained after suit brought, can be given in evidence on the plea of *non assumpsit.*   No one will doubt that money had and received in payment after action brought, but before trial, may be given in evidence under the general issue of *non assumpsit* in an action on the case, or that the record of a recovery from another person equally liable with the defendant to the payment of the same sum for which the action is brought, may not also be given in evidence under the general issue.   A person, who has once recovered a full and complete satisfaction from one man, cannot again recover from another, for the same thing.   The cases of indorsed notes, or of trespasses committed by several persons, are illustrations of this principle.   In the case of *Bird* v. *Randall,* 3 *Burr.* 1353, which was an action on the case for inducing a journeyman to leave the service of the plaintiff, Lord *Mansfield* says, " an action upon the case is founded upon

[Lyon v. Marclay.]

the mere justice and conscience of the plaintiff's case, and is in the nature of a bill in equity, and in effect is so ; and therefore, such a former recovery, release or satisfaction need not be pleaded, but may be *given in evidence.* For whatever will in equity and conscience, according to the circumstances of the case, bar the plaintiff's recovery, may in this action be given in evidence by the defendant ; because the plaintiff must recover upon the *justice and conscience of his case,* and upon *that only.*" From an attentive consideration of the principles contained in this case of *Bird* v. *Randall,* it seems, that satisfaction or releases given after suit brought, but before trial, may be given in evidence in this action, under the general issue. And with this opinion accords the case of *Bailey et al.* v. *Fettyplace,* 7 *Mass.* 325. *Sedgwick,* Justice, says, whenever full satisfaction has been received by the plaintiff, *before the trial,* it is as effectual a bar to his recovery, as if he had been paid before the commencement of the action. He cites the case of *Bird* v. *Randall,* and adds, that a full satisfaction, after the commencement of the action, and *before the trial,* need not be pleaded, but may be given in evidence under the general issue. I am clearly of opinion, from these authorities, as well as from the reason and justice of the law, that the release was improperly rejected, and that the court erred in not admitting it.

The last point, which it is material to notice is, whether an executory gift, unaccompanied with any delivery of possession, is a *nudum pactum,* and therefore neither binding, nor to be enforced in law or equity. It has been contended, that a gift is not consummate until delivery of possession of the thing promised. In the case of *Fink* v. *Cox,* 18 *Johns. Rep.* 145, it has been decided, that a promissory note for 1000 dollars, given merely from affection, by a father to his son, and payable sixty days after date, was not a valid gift of so much *money,* but a mere promise to give, and that *blood* or *natural affection* was not a sufficient consideration to support a simple executory contract. The counsel for the plaintiff in error also referred to *Kent's Com.* 354 ; *Pearson* v. *Pearson,* 7 *Johns. Rep.* 26 ; *Noble* v. *Smith,* 2 *Johns. Rep.* 52. I content myself, by merely referring to the cases on this point, cited by the counsel, which seem to support the position contended for ; because, Mr *Ellmaker,* on the part of the defendant in error, with his usual candour, distinctly said, " we do not differ about the law of gifts, but the application of it to this case." He contended, that *Thomas Lyon* was the natural guardian of *Ann,* and that therefore the gift was as fully consummated by delivery, (the fund or thing being in his hands) as in the nature of things it could be. This reasoning, I think, is more ingenious than sound. As I understand the law, the natural guardian has no power to receive the minor's money ; nor can he release any claims the minor may have. If *T. Lyon* did receive any money for her, no doubt he would be considered as holding it in trust. It strikes me, that the most important question is one of fact, and that is, whether *Elizabeth,* the mother, paid into the hands of her father 500 pounds for

[Lyon v. Marclay.]

her daughter *Ann*. And if this fact should be established in the affirmative, then, whether the law would permit her to revoke or alter the original direction of the use to which it had been applied.

I am inclined to think, that money deposited in the hands of the father by the daughter, to be paid to *Ann*, without any consideration having been received, and with no other claims upon it, than the mere benevolence of *Elizabeth*, would be only a *gift*, subject to the same rules of law which govern other gifts. *Elizabeth* might countermand the order to pay to *Ann*, and direct it to be paid to herself, if no other person had derived any claim to it before such countermand. And *Ann*, thus situated, could not enforce the payment thereof. 2 *Dessaus*. 79. This I consider correct, as a general principle ; but circumstances may exist, arising out of the particular transaction of the case, which would essentially vary the rule.

I have expressed my opinion upon the points adverted to in the argument ; from which it appears the court erred in the particular instances referred to.

Judgment reversed, and a *venire facias de novo* awarded.