# Gray *against* Bell.

Assignees under a voluntary assignment are not liable in an action for money had and received, before an account has been settled and decree made by the court of common pleas.

If an execution be illegally issued and levied on assigned property, a promise by the assignees to be personally responsible for the debt upon withdrawing the execution, is void for want of consideration.

One who procures an assignment to be made and participates in its benefits, shall not afterwards be permitted to defeat it by levying an execution on the property assigned.

WRIT of error to the district court of *Alleghany* county.

This was an action of *assumpsit* by James Gray against William Bell, Jun., John Alexander and Thomas Stevenson. The defendants were the assignees of Samuel Stevenson, under a voluntary assignment for the benefit of certain creditors, of whom the plaintiff was one. The defendants had never settled an account. The plaintiff, in one count in his declaration, claimed the amount due to him under the assignment; and in another, claimed upon an express promise of the defendants to pay the debt individually.. On the subject of the latter claim much parol evidence was given, the substance of which is sufficiently stated in the opinion of the court. The questions which arose were whether the action could be maintained on the first count, before account settled and decree made. And whether the promise by the assignees, as laid in the second count, was upon a sufficient consideration. The court below (Grier, president) was of opinion, on both points, against the plaintiff, and the jury found accordingly. This opinion was the subject of the errors assigned, which were argued by

*Biddle* and *Foster*, for plaintiff in error.
*Craft* and *Watts*, for defendant in error.

[Gray v. Bell.]

The opinion of the Court was delivered by

SERGEANT, J.—The first of these cases is a suit brought by James Gray against William Bell, John Alexander and Thomas Stevenson, *assignees under a voluntary assignment of Samuel Stevenson ;* and the material questions are, *first,* whether the assignees are liable in an action for money had and received before an account has been settled and decree made by the court of common pleas: and *second,* whether they have rendered themselves personally responsible by their individual promise, as stated in the first count.

1. After voluntary assignments, giving preferences to particular creditors, had been sanctioned by our courts and were of daily occurrence in practice, the legislature found it necessary to provide regulations guarding against the abuses attending them, and compelling a faithful application of the funds according to the trust. The acts of the 24th of March 1818, 14th of April 1828, and 28th of March 1831, gave to the courts of common pleas a special jurisdiction, in the exercise of which all parties interested have an opportunity to be heard. Creditors may establish their own claims, contest those of others, investigate the conduct and claims of assignees ; and that court can, on a full view of the situation of the estate, adjust the amount of the assets, the commissions of the assignees, and their respective liabilities. Trustees of insolvent debtors are, by these acts, subjected to the same regulations ; and indeed some system of the kind seems indispensable to the proper settlement of bankrupt and insolvent estates. It would be almost impossible to ascertain the rights of creditors and their respective proportions, by a partial view of a single case in a common lawsuit. The property would be consumed in costs and expenses ; and perhaps the matters in controversy differently decided in different cases. As creditors would have no day in court, or notice, their rights might be sacrificed, and collusion take place, between the assignees and favoured creditors. The equitable course of proceeding provided by the acts of assembly would be abandoned if such suits were allowed, and great inconvenience ensue : whereas, by adopting it, a creditor, whether preferred or not, can, after the lapse of one year, compel an adjustment of his claim, and then proceed to recover it, either by summary process under the acts, or by a suit at common law. Till a settlement and decree, the assignees owe him no debt, but are trustees for the benefit of all concerned, to inquire into and collect the assets, and ascertain the claims and proportions due to each creditor. This point may be considered as having been decided in Wilhelm *v.* Miley, 5 *Serg. & Rawle* 137. There the plaintiff was a creditor of a person against whom a domestic attachment had issued, and the defendants were trustees and had sold the property attached. The plaintiff offered to prove that the defendants received the proceeds of sale ; that they had previously agreed to submit the plaintiff's claim to arbitrators, who found for the plaintiff ; and that they had paid other creditors ten shillings in the pound of their

respective debts.   Yet it was held that this evidence was rightly rejected by the court below ; this court declaring that the defendants should have been called before the court of common pleas to settle their accounts, before an action at common law could be supported.

In the case of Rush *v.* Good, 14 *Serg. & Rawle* 231, decided by this court in 1826, it was accordingly intimated, that an action would not lie against assignees for a proportion or rateable part of the debt claimed, until the creditor has proceeded against them so far as to have a dividend declared, and distribution ordered, as directed by the act of assembly.   In several cases occurring soon afterwards, the principle was directly determined by this court, and the practice, it is believed, has conformed to *it.*   The acts of 1828 and 1831, passed since that decision, enlarge the jurisdiction of the courts of common pleas, and define the force and effect of their decrees, and seem in their language and spirit to support the established construction of the act of 1818.   I perceive no difference whether the creditor is simply preferred in the assignment, or constitutes one of a class.   In both cases other creditors ought not to be deprived of the rights preserved to them by the course prescribed in the acts of assembly.   The rules of other codes resembling our own are analogous.   In England the assignees of a bankrupt are not personally liable to be sued by any creditor, but he must prove his debt, and accept the dividend payable to him ; and though after a dividend has been declared an action might formerly be maintained against the assignees for the creditor's share, as money had and received to his use, yet even this is altered by statute.   1 *Chit. Plead.* 41.   In New York, under the act for giving relief against absent and absconding debtors, the creditor cannot maintain a suit at law for his debt against the trustees appointed pursuant to the act, before the demand has been proved or adjusted, and a dividend declared.   Peck *v.* Randall's Trustees, 1 *Johns. Rep.* 165.   We are therefore of opinion that the plaintiff's action was not maintainable on the count for money had and received to the plaintiff's use, before the accounts of the defendants had been filed, and a decree made thereon in the court of common pleas, under the acts of assembly.

2. Have the defendants rendered themselves responsible to the plaintiff by their individual promise ?

It appears that some time prior to the assignment, as early as March 1832, James Gray had issued a *fieri facias* against Samuel Stevenson on his first judgment, which was returned not executed to June term 1832 ; he issued an *alias fieri facias,* which was also returned not executed to October term 1832 ; he issued a *pluries fieri facias,* which came to the sheriff's hands on the 28th of July 1832. On his second judgment he issued a *fieri facias,* and placed it in the sheriff's hands the same day.   These executions Stevenson had taken steps to set aside, but on the 31st of July 1832 Gray entered into a written agreement with him for the adjustment of their dis-

[Gray v. Bell.]

putes. This agreement stipulated in the first place for a settlement by a reference of their private accounts for cash, merchandise, rent, &c. In the next place, the existing liabilities of Gray for Stevenson, then due, were to be immediately provided for. Both these have been settled, and about them there is no dispute. Then came the following clauses: "*Mr Gray to be at liberty to issue executions for any of the prospective liabilities as soon as the same may fall due;* and in the mean time Mr Stevenson to pay into the hands of Mr Watts, to be applied towards the payment of the liabilities aforesaid, such sums as he can provide from his business and collections, not less than one half thereof." " *The executions now in the hands of the sheriff are to be withdrawn, and to be issued only in pursuance of the above agreement.*" The prospective liabilities stated in the plaintiff's declaration were Duhring's debt, on a bill drawn by S. Stevenson on Gray, in favour of Duhring, dated the 1st of May 1832, payable in four months; and Nisbitt's debt, a note by S. Stevenson to Gray, dated the 31st of August 1830, payable in two years, and indorsed to Nisbitt. These securities would not be payable till the 3d and 4th of September 1832.

Under these circumstances, Gray had no right, after the assignment, to levy on the property assigned. The existing executions were withdrawn by the agreement: none were to issue but for the prospective liabilities. These liabilities did not become payable until September 1832, and on the 7th of August 1832 Stevenson made his assignment. The power of Gray to levy on the assigned property as the property of Stevenson for the prospective liabilities was gone, though he might levy an execution on the person of Stevenson, or on his other property. The plaintiff's threat to the assignees was therefore groundless, and the idea that his executions were in the hands of the sheriff as valid executions, a mistake. But it is further in evidence, that the assignment itself was made with the consent and participation of Gray, and in trust to carry into effect the same stipulations in his behalf, which were mentioned in the agreement. It cannot be permitted that a party shall in one breath procure an assignment to be made and participate in its benefits, and in the next attempt to defeat it by levying an execution. Even if Gray had a continuing lien under his executions, the part he took in procuring the assignment would be a waiver of it.

The consideration failing, the promise, if proved, would be *nudum pactum*. But on looking at the evidence of a promise, it is insufficient to show an understanding by the defendant that they were to make themselves personally responsible beyond the requisitions of their official duty. It seems to amount to no more than declarations by some of them, that they would fulfil their duty, and pay out the moneys according to the assignment as soon as possible. An attempt by a creditor to make assignees personally responsible ought not to rest on such slight grounds. I am of opinion that the plaintiff has failed also in establishing this point, and that the charge of the court below was correct.

[Gray v. Bell.]

In the other case the cause of action in the present suit was offered as a set-off, and rejected.   For the reasons already given, the rejection was proper.

Judgment affirmed.