# Heckert's Appeal.

1. The amount of compensation to a trustee must depend on the discretion, which is the reason and conscience of the tribunal having jurisdiction of the trust; and in fixing it, regard is to be had to the amount and character of the trust estate, and to the labor, skill and success attending the administration of it.

2. The same rule is applicable to the question of interest, and to counsel fees.

3. Where an assignment was made of all the assignor's estate real and personal for the benefit of his creditors, it was *Held* that this was a direct and continuing trust, and that the assignor could not allege the statute as a bar to the assignee's obtaining credit for claims existing against the assignor at the

time of the assignment, but which were not paid by the assignee till they had been due above six years, the trust having continued for about thirteen years before the sale of the last and most valuable portion of the trust estate.

4. The assignment being in trust to pay creditors, was a trust exclusively cognisable in equity; and though jurisdiction over it was vested in the *Common Pleas* it was vested as an equity power, and the proceeding against the trustee must be according to the course of Courts of Chancery and not by action at common law; and though the assignor if sued at common law by any of his creditors, might have interposed the bar of the statute to the personal claim, yet the assignee standing in a fiduciary relation to the creditors could not interpose it, and therefore the assignor shall not set it up against the assignee in relation to claims which it was obligatory upon him to pay.

APPEAL by George Heckert from the decree of the Common Pleas of *Lancaster county* on the account of James B. Lane, assignee of the said George Heckert for the benefit of his creditors.

On the 11th May, 1840, George Heckert and wife, by deed of that date, assigned, transferred, and conveyed to James B. Lane all his estate, real and personal, for the benefit of his creditors. The important part of the real estate conveyed consisted of an interest in certain coal lands in Northumberland county, being the undivided half of Greenridge tract, containing 1874 acres and 87 perches, the undivided fourth of Buckridge tract, containing 848 acres, and the undivided half of the "Esther Cremer" tract, containing 438 acres.

The personal property consisted of coal and coal screenings in the hands of persons at different places, and of other personal property and claims due to the assignor. The amount of the inventory of the whole estate was $99,511.45; and the security given by the assignee was to the amount of nearly $200,000. The interest of the assignor in the land on Buckridge and Greenridge, estimated in the inventory at less than $60,000, was, in 1853, sold for above $97,000.

The account, in which this appeal was entered, was the third and final account of the assignor, and was submitted on the 18th April, 1853.

The first account consisted of the proceeds of real estate in Lancaster, and of coal and other personal property, in different counties, the amount realized exceeding $30,000.

The second account consisted of proceeds from real estate in York, and of personal property, in all exceeding $4500. The first and second accounts were confirmed as submitted.

The third account consisted of proceeds from sale of the interest of the assignor in the Buckridge and Greenridge lands in Northumberland county.

The lands last referred to were sold on the 3d March, 1853, at the Exchange, Philadelphia, for $85 per acre, the purchaser having previously agreed to bid that sum, the owners of the other interests in the said land agreeing to sell their interests at the same time, by which it was said, on part of the accountant, more was realized

for the interest conveyed by Heckert than if his interest had been sold separately.

The third account was submitted in April, 1853. In May, 1853, exceptions to it were filed on part of Heckert, and auditors were appointed in August, 1854. The auditors, *inter alia*, overruled the objection, on the part of the assignor, of the statute of limitations as to simple contract claims paid by the assignee; holding that a commission of bankruptcy or an assignment of the debtor's estate, suspends the statute as against a creditor upon the fund: Ex parte Ross, 2 *Glynn & J.* 47; 1 *Binney* 209; 8 *Watts* 504; 9 *Id.* 223; 4 *Barr* 57. Until settlement, the assignee cannot be sued, but is a trustee for all concerned: 14 *Ser. & R.* 231; 4 *Watts* 410; 1 *Wh.* 408; 2 *Watts* 218; 2 *Parsons* 263–4; 1 *Whar.* 408.

As to *interest.* The accountant was charged with interest on the balance of his account, or cash in hand from 17th May, 1853, when exceptions were filed, till 5th March, 1855; and with interest on $26,556.03½, being the amount of a bond due on 24th March, 1854, which interest had been received since the account was filed. Two months were allowed to him for investment of the amount for distribution.

As to the *allowance.* The auditors observed that the estate was large and complicated. The trust began in 1840 and continued till March, 1853. That the assignee resisted solicitations of the assignor to sell when a much less price would probably have been obtained than was finally got; and that the final sale raised the estate from insolvency, and left a handsome sum for the assignor.

Exceptions were taken to the report of the auditors: 1 and 2. To allowances to counsel which exceeded $2600. 3. To the charge of the auditors, in all $400, as excessive. 4. To the allowance of commissions to the accountant in amount exceeding $5000. 5. That the auditors had not charged the accountant with a sufficient amount of interest for moneys of the estate, alleged to have been used by him for his own purposes, and for moneys which ought to have come into his hands and been used for the benefit of the estate. 6. To the allowance of simple contract claims, amounting to the sum of $2886.79½ as not being proved, and being barred by the statute of limitations.

The exceptions were overruled, and the report was confirmed.

On the part of Heckert, it was stated that the estate sold amounted to about $116,000, about $15,000 of which was personal property. That the assignee employed an agent to look after the land, while unsold, to whom he paid a yearly allowance out of the estate—that the assignee charged for his personal expenses while on the business of the estate, and was finally allowed 5 per cent. on the whole sales, of the real as well as personal estate, except

[Heckert's Appeal.]

for the amount of the first account, in which he was allowed 2½ per cent. on the amount of the real, and 5 per cent. on the amount of the personal estate.

It was further stated that the assignee sold real estate for nearly $95,000, in March, 1853, received part of the money, viz., 10,000, deposited it in bank, and within a week afterwards drew it out and used it. The counsel fees paid amounted to $2665; and the commissions on all the accounts to $6508.65. As to the simple contract debts, it was observed that they were fifteen years old and never revived; and that they were allowed, although the assignor insisted that they were unjust.

Exception was taken to the allowance of more than 2½ per cent. for commission on the proceeds of real estate. 2. In not charging interest—to the counsel fees,—and to the disallowance of the operation of the statute of limitations.

*Stevens*, for the appellant, contended that no more than 5 per cent. on the proceeds of personal, and 2½ on the proceeds of the real estate should be allowed: Walker's Estate, 9 *Ser. & R.* 223; 4 *Wharton* 98; 4 *Watts* 389; 1 *Whar. Dig.* 1108, &c.

When an assignee mingles the trust fund with his own, and uses it, he is chargeable with interest from the time of the receipt, and not with compound interest: Dyott's Estate, 2 *W. & Ser.* 557.

As to the statute of limitations, reference was made to 4 *Watts* 430; 1 *Watts* 166; 1 *Strange* 556; 15 *Ves.* 496; 19 *Ves.* 498; 4 *Wharton* 455; 1 *Id.* 106; 1 *Strange* 556; 1 *Watts* 275; 1 *W. & Ser.* 118; 7 *Johns. Ch.* 100–110–129.

*Parke* and *Fordney*, with whom was *Champneys*, for the appellee.—The creditors pressed the assignor for the sale of the estate when he could not have obtained more than 30 per cent. of the claims against it. He did not charge commission upon any part of the estate except on such as was sold, and the proceeds realized, although he had charge of the estate for about thirteen years. The amount of compensation should depend on *the nature of the trust and the property:* 1 *Baldwin* 158, Burr *v.* McEwen; 3 *W. C. C. Rep.* 434; 4 *Rawle* 98. An executor is entitled to a compensation adequate to his care and trouble, besides allowance for his necessary expenses: 9 *Ser. & R.* 207. The personal care and anxiety of the trustee is a fair subject of consideration: 1 *Ashmead* 323. The assignee defended a suit, which was finally decided in favor of the assignor by the Supreme Court.

A report of auditors should not be set aside, except for plain mistake: 5 *Barr* 413.

As to the statute of limitations: A devise for the payment of debts suspends the running of the statute: 1 *Binney* 209; 8 *Watts*

504; 9 *Id.* 523; 4 *Barr* 57. Why should not an assignment have the same effect? Suit cannot be brought against the assignee until settlement: 14 *Ser. & R.* 231; 4 *Watts* 410; 1 *Wharton* 408. Judgment against the assignor would not alter the grade of a simple contract debt, and, if suit were maintained, costs might be created against the estate. The statute does not run against creditors under an insolvent assignment: 2 *Watts* 218; 2 *Parsons* 263–4. Such a trust is peculiarly a subject of equitable cognisance: 1 *Wharton* 408. In the case in 1 *Binney* it is said that it would be dishonest in an executor to plead the statute against a debt which he knows to be just. The claims paid in this case were submitted to the assignee in due time.

As to the matter of *interest*, see Lane's Appeal.

The opinion of the Court was delivered, October 1, 1855, by

WOODWARD, J.—It has been long settled in Pennsylvania that trustees of all sorts are entitled to reasonable compensation for their services, though there be no stipulation on the subject in the instrument creating the trust. But the law has fixed no rule for measuring the rate of compensation, and it is obvious, from the infinitely diversified circumstances attending trusts, that no inflexible rule ever can be prescribed. The amount of compensation must depend on the discretion, which is nothing else than the reason and conscience of the tribunals having jurisdiction of the trust. In the admeasurement of it, regard is to be had to the amount and character of the estate, and to the labor, skill, and success attending the administration of it. The auditors seem to have assessed this assignee's compensation with intelligent reference to these ruling points. We have considered all that has been urged against their conclusions, without perceiving any ground for reversing them.

And similar observations are applicable to the two errors assigned upon the interest account and counsel fees. The appellant has no reason to complain of the action of the auditors on these subjects.

We are of opinion that the statute of limitation has no application here. This was a direct and continuing trust, and was exclusively cognisable in a court of equity. True the jurisdiction is vested by Act of Assembly in the Common Pleas, but it is vested as an equity power, and no common law action would lie against the trustee: Gray *v.* Bell, 4 *Watts* 410. Whether specific execution of the trust be the object sought, or the discharge of the trustee, or the compelling him to account, or whatever be the proceeding against him, it is necessarily according to the course in Courts of Chancery, and it is an immaterial accident that the jurisdiction is vested in a common law forum: Vanarsdale *v.* Richards, 1 *Wh.* 408. Such a trust is not touched or affected by

[Heckert's Appeal.]

the statute of limitations: Kane *v.* Bloodgood, 7 *Johns. C. R.* 110; 2 *R.* 287; 1 *Watts* 275; 2 *Parsons* 263.

Whilst therefore the assignor might plead the statute if sued for the debts in schedule B, because the personal action against *him* was barred by the lapse of time, his assignee, standing in a fiduciary relation to these creditors, could not set it up against them; and because he could not, the assignor shall not set it up against the assignee.    That is, Lane having been compelled to pay these debts, is entitled to a credit for them, and Heckert having made the assignment for the purpose of paying them, with the rest, has no reason to complain that it has been so administered as to accomplish the object of its creation.    The statute protects him from personal action, but not his estate from liability in the circumstances in which he has placed it.

The decree is confirmed.