## BUSS MACH. WORKS et al. v. WATSON-TOWN DOOR & SASH CO.

### No. 674.

District Court, M. D. Pennsylvania.

Jan. 28, 1933.

See, also, 2 F. Supp. 757.

Knight & Kivko, of Sunbury, Pa., and Chas. C. Lark, of Shamokin, Pa., for petitioners.

Frederick V. Follmer, and Harry W. Chamberlin, both of Milton, Pa., and John G. Reading, of Williamsport, Pa., for respondent.

JOHNSON, District Judge.

On June 24, 1930, upon application of the complainants, this court appointed receivers in equity to take charge of and operate the plant of the defendant company. The plant was operated until September 21, 1932, when the receivers petitioned this court for leave to sell the assets of the company and on December 28, 1932, an order was entered authorizing the receivers to expose the property at public sale on January 28, 1933, under and subject to the lien of a mortgage in favor of the Lycoming Trust Company, substituted trustee, for bondholders. The mortgage in question was given by the Watsontown Door & Sash Company on October 1, 1927, several years prior to the appointment of receivers, and duly recorded.

According to its terms, the mortgage covered "all plants, factories and structures now or *hereafter erected upon* or attached to any of the lands which, or interest in which, are hereby conveyed or intended so to be, and all fixtures, equipment, machinery, apparatus, tools, implements and appliances, materials and supplies at present or in the future belonging thereto, whether or not the same be affixed to the freehold or be used in the operation of any of said premises or as a part of said plants or any of them, and patents, applications for patents, trade marks, trade names, copyrights, formulæ and the good will of the business now or hereafter carried on by the Company."

At various times during the period of the receivership petitions to reclaim the sprinkler system installed in the mill of the defendant company and also to reclaim certain pieces of machinery used in the operation of the mill were filed by the Globe Automatic Sprinkler

Company, the Moore Dry Kiln Company, the Solem Machine Company, the Allis-Chalmers Manufacturing Company, and the Yates-American Machine Company.

The claimants aver that the Sprinkler system and machinery in question were sold to the Watsontown Door & Sash Company prior to the receivership under the terms of conditional sales contracts, which were duly filed in the office of the prothonotary of Northumberland, Pa., county wherein the Watsontown Door & Sash Company is situate, in accordance with the provisions of the Uniform Conditional Sales Act, of Pennsylvania, 1925, May 12, P. L. 603; 1927, May 12, P. L. 979.

Rules were granted on the foregoing petitions and answers filed by the receivers of the Watsontown Door & Sash Company and also by the Lycoming Trust Company, trustee for the bondholders under the mortgage. A hearing was had on the issues raised and briefs submitted by counsel for all parties.

■ The only objection raised to the prayer of the petitions of the Allis-Chalmers Manufacturing Company and the Yates-American Machine Company is that under the provisions of section 7 of the Uniform Conditional Sales Act of 1925, as amended by section 2 of the Act of 1927 (69 PS § 404), the property sold has been affixed to the real estate of the Watsontown Door & Sash Company, and has become a part thereof, and cannot be severed without material injury to the freehold. Counsel for the trustee under the mortgage also contend that, since the mortgagee has never consented to the reservation of the property in the goods by the vendor, the lien of the mortgage extends to and covers the property affixed to the real estate by reason of the provision in the mortgage set forth above. There is no contention on the part of the receivers or the trustee under the mortgage that the conditional sales contracts of these two companies were not properly filed, indexed, and refiled in accordance with the requirements of the Uniform Conditional Sales Act (69 PS § 361 et seq.).

The right of the Allis-Chalmers Manufacturing Company and the Yates-American Machine Company to retake possession of the property to which they have retained title resolves itself into the question of fact whether, under the provisions of section 7 of the Act of 1925 as amended by section 2 of the Act of 1927, as against a prior mortgagee who has not assented to the reservation of property in the goods, the goods are so attached to the realty as not to be severable without material injury to the freehold.

The property in question consists of saws, motors, sanding machines, lathes, and numerous pieces of machinery used in the production of building lumber and millwork. At the hearing there was little or no testimony adduced to show in what manner or to what extent the property of these two claimants was affixed to the real estate. However, as to the property claimed by the Solem Machine Company and the Moore Dry Kiln Company, which property is to some extent similar in nature to that claimed by the Allis-Chalmers Manufacturing Company and the Yates-American Machine Company, counsel stipulated on the record that the machinery could be severed from the realty with little or no injury to the freehold. In the absence of any proof to the contrary, it must be assumed that property of a similar nature could also be removed without material injury to the freehold. There is no proof that the removal of this property would cause material injury to the freehold. For the reasons above stated, the prayer of the petitions of the Allis-Chalmers Manufacturing Company and the Yates-American Machine Company must be granted, and the property claimed in the petitions must be surrendered to the petitioners. If it appears that any injury to the freehold will result from the removal of this property, the receivers or the trustee under the mortgage are hereby granted leave to apply to this court for an order requiring the claimants to file good and sufficient bonds conditioned upon the immediate repairing of any damage to the freehold occasioned by such retaking and removing.

■ The claims of the Solem Machine Company and the Moore Dry Kiln Company present a more difficult question. The conditional sales contracts under which the property in question of these companies was sold were properly recorded on February 6, 1928, and December 4, 1927, respectively. The conditional sales contracts of the Moore Dry Kiln Company were refiled on October 20, 1930, but the contract of the Solem Machine Company was never refiled. The receivers were appointed for the Watsontown Door & Sash Company on June 24, 1930, several months before the validity of the original filing is alleged to have lapsed.

Section 5 of the Pennsylvania Uniform Conditional Sales Act (69 PS § 402), above referred to, provides as follows: "Every provision in a conditional sale reserving property in the seller shall be void as to any purchaser from or creditor of the buyer who, without notice of such provision, purchases

the goods or acquires by attachment or levy a lien upon them before the contract or a copy thereof shall be filed, as hereinafter provided, unless such contract or copy is so filed within ten days after the making of the conditional sale."

Section 11 of the same act (69 PS § 408) provides: "The filing of conditional sale contracts provided for in sections five, six, and seven shall be valid for a period of three years only. The filing of the contract provided for by section eight shall be valid for a period of fifteen years only. The validity of the filing may in each case be extended for successive additional periods of one year from the date of refiling by filing in the proper filing district a copy of the original contract within thirty days next preceding the expiration of each period, with a statement attached signed, by the seller, showing that the contract is in force and the amount remaining to be paid thereon. Such copy with statement attached shall be filed and entered in the same manner as a contract or copy filed and entered for the first time, and the filing office shall be entitled to a like fee as upon the original filing."

Counsel for the receivers and for the Lycoming Trust Company, trustee under the mortgage, have stipulated on the record that the property claimed by the Solem Company can be severed from the realty without material injury to the freehold, and that the property claimed by the Moore Dry Kiln Company can be severed with but slight injury to the freehold. The question as presented by the record and stipulations is whether the failure of the claimants to refile their conditional sales contracts within the period prescribed in the act of assembly invalidates their right to retake possession of the property from the receivers or from the trustee under the mortgage.

When the receivers were appointed, the statutory period of three years had not expired on the conditional sales contracts of either claimant, and the claimants contend that their failure to refile does not divest them of their previously acquired right to retake possession of the property, for the reason that, when the receivers were appointed, the rights of all parties interested in the property of the Watsontown Door & Sash Company became fixed as of the time of the appointment of the receivers.

The case of McCormick v. Puritan Coal Mining Company, 28 F.(2d) 331, 332, decided by the Circuit Court of Appeals for the Third Circuit, thoroughly discusses the equitable principles here involved, and establishes the law of this, the Third Circuit, in relation to the rights of creditors and claimants of an insolvent corporation for which receivers have been appointed.

That part of the opinion of the court, Thompson, District Judge, which relates to the question here presented, is as follows:

"The assets of the coal mining company were taken into the custody of a court of equity through its receivers upon a creditor's bill for its preservation for the benefit of all of its creditors, and, if the statute of limitation between creditors claiming their proportion of the insolvent trust estate on the ground that the period of limitation had expired since the trust was created were applied, it would conflict with long and well-established doctrines to the contrary. The general rule of equity, which has been sustained in that class of cases where an insolvent debtor's property has come into the custody of the court to be distributed under equitable principles for the cestuis que trustent, is that the rights of all parties are fixed as of the time when the property was taken into the custody of the court. Heckert's Appeal, 24 Pa. 482; McClintock's Appeal, 29 Pa. 360; Kirkpatrick v. McElroy, 41 N. J. Eq. 539, 7 A. 647.

"It was held by this court, in Ludowici Celadon Co. v. Potter Title & Trust Co. (C. C. A.) 273 F. 1009, in an opinion by Judge Buffington, that a creditor who had a valid judgment lien against the land at the time of the judgment debtor's bankruptcy need not thereafter revive his judgment by scire facias to preserve the lien as against the trustee and the existing creditors, since the rights of all parties became fixed at the time of the bankruptcy. In that case, the ruling of Judge Acheson in Re McKinney, Bankrupt (D. C.) 15 F. 912, was followed. It was there held that mere lapse of time will not bar a claim against a trust estate valid and in full life when the trust was created, so long as the estate is unadministered and the trust subsists.

"In the case of an insolvent estate in the hands of an assignee in trust for them under the Pennsylvania statute in Coates' Estate, 2 Pars. Eq. Cas. (Pa.) 258, it was held that such an assignment, as between assignor and creditor, is a direct trust, on which the statute of limitation does not operate.

"In McCandless' Estate, 61 Pa. 9, it was held that, while the death of a debtor does not suspend the running of the statute as respects the right of action, nevertheless, where the

limitation had not expired at the death of a decedent and the decedent's personal estate had passed to his personal representatives on the express trust and confidence that they would give to the creditors their just proportions, the statute cannot be pleaded when the creditor proceeds in the orphans' court for a distributive portion of the debtor's estate.

"In the instant case, it was set out in the bill that the defendant, in addition to an outstanding mortgage debt of approximately $1,250,000, had liabilities of upward of $75,000, including taxes, and there was a prayer for a receiver for the protection of all creditors. The purpose of the receivership, therefore, was to protect municipalities having tax claims as well as other creditors. Under the general equitable rule, which has been applied in the courts of Pennsylvania in a long line of cases following those above cited and in this court in Ludowici Celadon Co. v. Trust Co., supra, we think the tax claim should have been allowed as a preferred claim, unless the Pennsylvania act of 1806 means that a creditor, having a valid lien for taxes when the receiver was appointed, loses his lien by failure to file the tax claim in the court of common pleas before the end of the third calendar year."

Counsel for the receivers have contended with much force that the Supreme Court of Pennsylvania has reached a contrary conclusion in the case of Scott et al. v. Waynesburg Brewing Company, 256 Pa. 158, 100 A. 591. In that case the court held that: "Where the real estate of a corporation, subject to the lien of a judgment, has passed into the hands of a receiver and thereafter the lien of the judgment expires through the failure of the judgment creditor to revive it, such judgment loses its original priority, and the owner thereof is not entitled to a preference in the distribution of the assets of the corporation. The appointment of a receiver does not do away with the legal requirement to revive the judgment in order to continue its lien."

The two decisions are in apparent conflict with each other, and under the circumstances this court will follow the more recent decision of the appellate federal court for this circuit in holding that the rights of the parties here became fixed at the time of the appointment of the receivers, and any failure to refile the conditional sales contracts cannot affect the right of the claimants to retake possession of the property in question upon the filing of a bond conditioned upon the immediate repairing of any damage to the freehold occasioned by such retaking.

There is one other point for discussion in the issues presented here. The position of the respondents, both the receivers and the trustee for the bondholders, is based on the assumption that the failure to refile the conditional sales contracts immediately voids all right of the vendor to retake possession of property, title to which he has reserved in himself, as against the whole world. A reading of the act of assembly discloses that this was not the intention of the Legislature. The purpose of filing these contracts is obviously to give notice to subsequent purchasers and persons who have acquired a lien on the goods by attachment or levy and who were deceived into extending credit to the vendee on the strength of the appearance in the vendee of ownership of the property in question.

As to prior mortgagees who have not assented to the reservation of property in goods which have been attached to the realty so as not to be severable without material injury to the freehold, the reservation of title in the goods is void, regardless of whether the contract has been filed or not.

Neither the receivers in this case nor the creditors of the Watsontown Door & Sash Company, whom they represent, are innocent purchasers of the goods in question, nor are they persons holding a lien by attachment or levy who have not had notice of the existence of the conditional sales agreements. In fact, the receivers have previously recognized these conditional sales agreements, and, after notice to creditors, were authorized by this court to make payments on account thereof.

So far as the trustee under the mortgage is concerned, a stipulation on the record has been entered in which counsel agree that this property can be removed without material injury to the freehold, and the trustee's objection to the removal of this property must therefore fail.

The remaining petition is that of the Globe Automatic Sprinkler Company seeking to reclaim from the receivers the sprinkler system installed in the plant of the Watsontown Door & Sash Company.

On June 2, 1927, the Watsontown Door & Sash Company entered into a conditional sale contract with McLean & Quick, Inc., of Wilkes-Barre, Pa., for the sale and installation of a sprinkler system in the plant of the Watsontown Door & Sash Company, which was duly recorded. Before completion of the installation, McLean & Quick, Inc., assigned its interest in the contract to the Globe Automatic Sprinkler Company. A copy of the assignment was recorded at that time. Later

a supplemental contract was entered into between the Watsontown Door & Sash Company and the Globe Automatic Sprinkler Company for the installation of additional sprinklers in two new buildings of the Watsontown Door & Sash Company. These contracts have been refiled from time to time down to the date of the petition of the receivers for leave to sell the assets in their possession.

Counsel for the receivers and for the trustee under the mortgage have filed objections to the *validity* of these conditional sales agreements because of alleged improper filing and indexing of these contracts. Whatever may be the validity of these contracts, the receivers and the trustee under the mortgage, as stated above, are not the class of people designed by the act of assembly to be protected by proper filing, and therefore have no standing to raise this question.

The serious question presented is raised by the trustee under the mortgage under the provision of section 7 of the Act of 1925, P. L. 603, as amended by section 2 of the Act of 1927, P. L. 979 (69 PS § 404), which provides for the protection of prior mortgagees against the attachment of goods to the realty to such an extent as not to be severable without material injury to the freehold, regardless of whether the contract has been filed, unless such material injury can be completely repaired by the seller.

A large amount of testimony was taken at the hearing before the court on the return day of the rule by the claimant and the respondents. From the testimony it appears that about 50 per cent. of the piping used in the sprinkler system is installed under concrete floors, in some places to a depth of five to six feet underground; at a number of places in the foundations of the buildings pipes leading from the outside pass through holes in foundation walls; for some distance the pipes are placed underneath foundations or concrete footings of the lumber shed of the company, and the removal of these pipes and the subsequent filling up of the holes might result in a sinking of the building to the serious damage of the property. Taken as a whole, the testimony clearly shows that, although precautions may be taken at the time of the removal of this sprinkler system, nevertheless the imminent danger to the freehold as a result of the removal of this property is so great that this court must find that material and permanent injury to the realty will be caused by the removal of the property sought to be reclaimed.

For the foregoing reasons the petition of the Globe Automatic Sprinkler Company must be denied and the petition dismissed.

Counsel are hereby granted leave to present a formal decree in accordance with the foregoing opinion.