## In re BERG.

### No. 6618.

District Court, D. Minnesota, Third Division.

July 8, 1940.

Frederick I. Bright, of St. Paul, Minn., for petitioner.

John P. J. Dolan, of St. Paul, Minn., for claimant Mrs. Daniel Guy.

W. L. Lindsten, of Minneapolis, Minn., for claimants Portia Wingfield, Dr. Paul Wilken, and A. F. Hesse.

Smith, Waldorf & Sehm, of St. Paul, Minn., for claimants C. J. and H. W. Anderson.

SULLIVAN, District Judge.

This matter came on before the court upon the petition of the trustee for a review of an order of the referee allowing certain claims against the bankrupt estate.

The questions certified for review are (1) whether the state statute of limitations has barred said claims which were allowed by said order; (2) whether Section 11, sub. f of the Chandler Act, 11 U.S.C.A. § 29 sub. f, is a bar to the allowance of such claims; and (3) whether the provisions of Section 57, sub. n of the Chandler Act, 11 U.S.C.A. § 93, sub. n, are applicable to this proceeding and to the proof of creditors' claims here involved.

Axel I. Berg, the bankrupt, was adjudicated a bankrupt on January 15, 1935, upon his voluntary petition. The claimants interested in the present controversy were duly scheduled by the bankrupt as creditors, and a notice of the first meeting of creditors to be held on January 28, 1935, was received by each of said creditors prior to that date. None of these claimants filed their claims in this proceeding prior to September 14, 1937, the date upon which the proceeding was closed as a no-asset case and the trustee discharged. The bankrupt's petition for a discharge was denied by an order of the court dated and entered on August 28, 1937.

The bankrupt died on July 22, 1938, and thereupon it was discovered that on the date of his adjudication he had substantial sums of money on deposit in banks under assumed names, and that these moneys were still on deposit in said banks at the time of his death.

On November 15, 1938, this bankruptcy proceeding was reopened by order of this court. Thereafter, proofs of claims were

filed by the claimants herein, on the respective dates hereinafter stated. A meeting of the creditors was held. A trustee was appointed, qualified, and reduced to his possession the funds and moneys concealed by the bankrupt during his lifetime. The trustee rendered his account, which was examined and allowed. The expenses of the administration up to that time were allowed and paid. The claims which had been proved and allowed within six months after the bankrupt's adjudication were paid in full, and there was left a substantial surplus in the hands of the trustee. The referee, thereafter, on August 2, 1939, made an order permitting the creditors who had not proved their claims within the six months after the bankrupt's adjudication, to do so, for the purpose of their participation in the distribution of said surplus.

The order of the referee allowing such claims is attacked by the trustee, no question, however, being raised as to the correctness of the amounts claimed.

The claims here involved, with the dates of accrual of the cause of action thereon, and of the filing in this proceeding, are as follows:

Minnesota statute of limitations, if the same had run prior to the date of the filing of the petition in bankruptcy by the bankrupt, would have been an absolute bar to said claims. However, the statute had not run as against any of said claims at the time of the filing of the bankrupt's petition.

It is the trustee's contention that even though the statute had not run before the filing of the petition by the bankrupt, the time within which actions might have been brought on said claims, as limited by the statute of limitations, expired before any of said claims were filed in this proceeding, that the statute had run before the time when under order of the court dated September 14, 1937, the proceedings were closed as a no-asset estate, and that the statute of limitations had run before the date of the expiration of the thirty days after the denial of the discharge of the bankrupt, the date of that order being August 28, 1937.

It is the contention of the claimants that the claims, at the time of the filing of the petition by the bankrupt, were valid and enforceable claims, free from any

| Name of Claimant | Date of Accrual of Cause of Action Against Debtor | Date of Filing Herein |
|---|---|---|
| C. J. and H. W. Anderson | July, 1931 (A payment on this claim made by debtor on May 16, 1934) | January 23, 1939 |
| Mrs. Daniel Guy | October 31, 1931 | January 23, 1939 |
| A. F. Hesse | March 4, 1932 | January 18, 1939 |
| Portia J. Wingfield | February 1, 1931 | January 18, 1939 |
| Paul Wilken | September 1, 1931 | January 18, 1939 |

All of the above debts were incurred by the bankrupt more than six years prior to the date of the filing of the claims thereon in this proceeding, and the Minnesota statute, Section 9191, Mason's Minnesota Statutes, 1927, limiting the time within which action might have been brought thereon against the debtor expired previous to the filing of all of said claims, save and except the Anderson claim, and the statute has been tolled in respect to that claim because of the part-payment thereon.

At the time of filing the petition in bankruptcy by the bankrupt, all of the above claims were valid claims against the debtor, and valid and enforceable claims in the bankruptcy proceeding and against the trust. These claimants have been dilatory in filing and proving their claims. The

objection, including the Minnesota statute of limitations; that the claims, being valid and enforceable at the time of the filing of said petition and the adjudication of the bankrupt, they continued so during this entire proceeding.

I am of the opinion that the contentions of the creditors are sound. Here we have to do, not with a claim which is made against the debtor or the bankrupt personally, or his estate, but with claims against the trust fund created by the adjudication of the bankrupt as such, and of the general bankruptcy laws. No claim is made against the bankrupt's estate in the Probate Court. Were such claim made in the Probate Court, the Minnesota statute of limitations would constitute an absolute bar to the enforcement of these claims.

■ Bankruptcy proceedings are the administration of a trust fund. The status of the claims is fixed at the time of the filing of the petition in bankruptcy. The general rule of law is that a claim valid at the time of the filing of a petition in bankruptcy remains a valid and enforceable claim against the trust estate in the bankruptcy court. See In re McKinney, D.C., 15 F. 912; King Iron Bridge & Mfg. Co. v. County of Otoe, C.C., 27 F. 800; McCormick v. Puritan Mining Co. et al., 3 Cir., 28 F.2d 331; Buss Machine Works et al. v. Watsontown Door & Sash Co., D.C., 2 F.Supp. 758.

■ The next question which presents itself is, may these claimants file their claims after the reopening of the bankruptcy proceeding. Under the bankruptcy law as it existed before the effective date of the Chandler Act (September 22, 1938), creditors were required to file their claims within six months after the bankrupt's adjudication, and would probably be barred, if this proceeding were carried out under the old Bankruptcy Act.

In Burton Coal Co. v. Franklin Coal Co. et al., 67 F.2d 796, the Circuit Court of Appeals for this Circuit held that a bankrupt's claim to a surplus arising out of newly discovered assets, where no suggestion of fraud on the part of the bankrupt appeared, was superior to a claim of a creditor who had not proved its claim in the time permitted under the then Bankruptcy Act. The proceedings in the Burton case were had previous to September 22, 1938. There was then no statute directing the distribution of a surplus remaining after the payment of all claims filed within the six months' period, and the payment of the expenses of administration. Since the adoption of the Chandler Act, the law permits the filing of claims by dilatory claimants, and the allowance thereof, and makes provision for the distribution of the surplus remaining among said claimants after the payment of the claims in full of the diligent claimants, and the expenses of administration up to that time. Sec. 57, sub. n, Chandler Act. This provision was incorporated in the Chandler Act to take care of just such situations as we find in this case. The purpose of said section is succinctly stated in the report dated July 29, 1937, No. 1409, of the Committee on the Judiciary on the Bill H. R. 8046 (Chandler Act), page 14, as follows: "There is also added a new and much-needed provision in the interests of creditors who have failed to file and prove their claims within the bar time, in a case, which occasionally occurs, where creditors who have duly filed and proved their claims are paid in full and there is a surplus remaining. In such a situation it is only fair and equitable that, as between the barred creditors and the debtor, such surplus should go to the barred creditors rather than to the debtor."

Further discussion of the intention of Congress is unnecessary. It is the contention of the trustee that Section 57, sub. n, is not applicable in the present proceeding. I am unable to agree with this contention. The bankrupt, during his lifetime, was guilty of fraud. He had held and concealed assets from the bankruptcy court. He was denied a discharge by reason of his failure to explain satisfactorily his losses of assets or deficiency of assets to meet his liabilities. It would not be fair or equitable to hold that the deceased bankrupt's representative or his estate should be permitted to profit and gain by the bankrupt's fraud to the prejudice of the creditors of the bankrupt in this proceeding.

Section 6, sub. b, 11 U.S.C.A. § 1 note, of the amendatory act reads as follows: "Except as otherwise provided in this amendatory Act, the provisions of this amendatory Act shall govern proceedings so far as practicable in cases pending when it takes effect; but proceedings in cases then pending to which the provisions of this amendatory Act are not applicable shall be disposed of conformably to the provisions of said Act approved July 1, 1898, and the Acts amendatory thereof and supplementary thereto."

The Circuit Court of Appeals for the Third Circuit, in Re Philadelphia & Reading Coal & Iron Co., 104 F.2d 126, 127, in considering the applicability of the Chandler Act to reorganization proceedings instituted before June 22, 1938, said that the provisions of said act were to apply in said proceeding only to the extent that the district judge ."* * * deems their application practicable. Practicable, as used in the act, is not synonymous with possible, but means feasible, fair and convenient."

The court, in the same case, said: "The report of the Senate Committee on the Judiciary upon the bill discloses that it was the intention of Congress to vest a full

704

discretion in this matter in the district judge. Senate Report No. 1916, 75th Cong. 3d Sess."

In a Second Circuit case, In re Old Algiers, 100 F.2d 374, 375, the court stated: " * * * the test of practicability should be whether the new provisions, for aught that has happened in the pending proceedings, can be applied as fairly and conveniently as they could be had the proceeding been started within three months of the effective date of the Act * * *".

See, also, City of Chelsea v. Dolan, 1 Cir., 24 F.2d 522; In re Stein-Lazow, Inc., D.C. of S.D.N.Y., 30 F.Supp. 409; In re Carter, 2 Cir., 32 F.2d 186.

■ The deceased bankrupt's representative and his estate had no vested right in the surplus remaining in the hands of the trustee after the full payment of the claims filed within the six months' period after the bankrupt's adjudication, and the payment of all expenses of administration up to that date. The bankrupt had no " * * * vested right * * * to have the law stand as it was." In re Seaholm, 1 Cir., 136 F. 144, 145, 147.

■ The bankrupt, upon filing his petition, and by force of law, without further act on his part, delivered and assigned all of his property not exempt under the Minnesota law to the bankruptcy court to be administered for the benefit of his creditors, and the bankrupt thereby created a trust for the payment of his creditors, and all his property, save such as may have been exempt, passed actually or potentially to the control of the bankruptcy court. See White v. Stump, 266 U.S. 310, 313, 45 S.Ct. 103, 69 L.Ed. 301.

In Ginsberg et al. v. Lindel, 107 F.2d 721, 726, the Circuit Court of Appeals for this Circuit said: " * * * under the bankruptcy power Congress may provide for the fair and equitable - distribution of a debtor's property among his creditors; * * *."

The court, in the Burton Coal Co. case, supra, 67 F.2d page 799, had this to say: "Newly discovered assets, upon reopening, form a part of the bankrupt estate. If, at the close of administration and distribution, a surplus results, the character of that surplus is not changed. It is still a part of the bankrupt estate. * * *"

In this proceeding we are not concerned with the rights of diligent creditors. They have been paid in full. The case at bar is one continuous proceeding. It was never finally closed. The proceedings were interrupted by the closing of the estate as a non-asset one, and was thereafter, and after the death of the bankrupt, reopened for a continuation of this proceeding.

■ We are concerned here with the administration of a trust created by the act of the bankrupt in filing his petition praying that he be adjudicated a bankrupt, and by the force of the bankruptcy laws. The assets of the bankrupt then in existence came under the actual control of the bankruptcy court, and the assets which were not disclosed in the schedules filed by the bankrupt potentially came under the control of the court, and upon the discovery of the concealed assets and their reduction to the possession of the trustee, control as to their administration was placed in the bankruptcy court. The bankrupt, as before stated, had no vested rights in these assets. He had turned them all over, potentially at least, to the bankruptcy court upon filing his petition. The estate was not fully administered on the effective date of the Chandler Act, and it seems just, fair and reasonable to apply the provisions of Section 57, sub. n, of the Chandler Act in closing this trust.

The order of the referee should be affirmed.