# Webster's Executors *versus* Newbold.

*Trust express and implied.*— *What Trusts are not affected by the Statute*
*of Limitations.*—*Acknowledgment sufficient to take Case out of the.*
*Statute.*—*Special Replication to Plea of the Statute of Limitations,*
*when necessary.*

In a suit by executors for a share of fees due their testator for professional
services as an attorney against another attorney who received the fees due
both. the Statute of Limitations was pleaded in bar to the action as not brought
within six years from the receipt of the fees by defendant, to which was
replied, on trial, an alleged trust, and an acknowledgment and promise to pay:
the jury were instructed that if the defendant had received the fees more than
six years before suit brought, their verdict should be for defendant.   On writ
of error it was *Held:*

1. That, there being no fraud or concealment in the receipt of the fees by
defendant, and no proof that he agreed to hold them in trust, no such express
or implied trust arose as would prevent the running of the statute:

2. That, where the proof of the acknowledgment and promise to pay by the
defendant was not explicit and unambiguous, it would not take the case out
of the statute; and the ruling of the court on the trial, that there was not
sufficient testimony to be left to the jury from which to infer a promise to
pay, was correct.

3. Where, on writ of error before the Supreme Court, the fact that letters
of administration to the executors had not been granted in the state of Penn-
sylvania until within six years, was also replied to the plea of the statute, it
was *Held*, that the question could not be decided because not raised in the
pleadings: non-administration should have been specially replied on the trial,
to the plea of the statute, but as no such replication was made, the question
as to its effect was not before the court, because not on the record.

[Webster's Executors *v.* Newbold.]

CERTIFIED from the Court at Nisi Prius.

This was an action on the case, brought January 16th 1860, by Fletcher Webster and R. M. Blatchford, executors of Daniel Webster, against John L. Newbold.

The plaintiffs declared in *assumpsit* on a special agreement between their testator and the defendant, to which were added counts on a *quantum meruit* and for money had and received, and claimed " two and a half per cent. upon the amount of the recovery in the case of Packer *v.* Nixon (Aspden's Estate) which was tried in the Circuit Court of the United States for the Eastern District of Pennsylvania, at April Sessions, 1828, No. 1 in equity, as the fee due for the services of deceased in said case before the Supreme Court of the United States at Washington, or a reasonable and proper compensation therefor." The defendant pleaded the Statute of Limitations, *non assumpsit*, payment with leave, &c. The material facts of the case appear to be as follows :—

Matthias Aspden died in August 1824, leaving an estate amounting to near a million of dollars, which he devised in general terms to his " heir at law."

In February 1828 a suit was instituted in the Circuit Court of the United States for the Eastern District of Pennsylvania, by Samuel Packer *v.* Harry Nixon, executor of Matthias Aspden, deceased, for the purpose of judicially determining whether the European or the American claimants of the property were the heirs at law, which question depended upon the fact, whether the testator was domiciled in England or in Pennsylvania at the time of his death, and when the will was made.

In this suit (in which a number of the Philadelphia bar, including the defendant, John L. Newbold, and Mr. Benjamin Tilghman were engaged as counsel), a decree was rendered by Baldwin, J., in favour of the European heirs, on the 26th of December 1833, from which decree an appeal was duly taken to the Supreme Court of the United States, at Washington. The counsel were to have seven and a half per cent. commission on the sum recovered for services.

In the winter of 1835, Mr. Webster, then in Washington, was employed as counsel by Messrs. Newbold, Tilghman and others to represent the American heirs, and to aid them in the reversal of this decree. It was alleged that Mr. Webster was to have a contingent fee of two and a half per cent. upon the amount recovered, and that his retainer should be restricted to the court at Washington ; that Mr. Webster rendered important service in the case ; conferred with his colleagues on several occasions, and took notes of the argument which was going on, and, on the second day of the argument, submitted a motion to the court, which, it was averred, sealed the fate of the case.

This motion was, that the argument of the case might be suspended, and the cause remanded to the court below, for the want

of proper averments or proofs as to the particular domicil of the testator, either at the time of his death or when the will was made, or at any intermediate period, which objection led to a reversal of the decree of 26th December 1833, and to the ultimate recovery of the fund for the American heirs.    Mr. Webster did not argue the case at Washington, nor does it appear that he ever afterwards took any part in the case, or that he was ever afterwards called upon or invited by his colleagues to take any part in it.    He had no doubt of the result, from the time the motion was made, and so expressed himself.    When he afterwards made known his intention to his colleagues, of taking no further part in the discussion, it was not objected to by them.

In January 1835, the Supreme Court of the United States reversed this decree of Judge Baldwin, and remanded the case back to the court below.

On the 6th August 1840, Grier, J., delivered an opinion affirming the verdict of the jury, on the feigned issue, in favour of the American domicil.

On the 11th November 1850, a decree was rendered by Grier, J., in favour of the American heirs, directing the fund to be divided into thirty-five parts, and that Joseph Trotter, administrator *de bonis non cum testamento annexo* of Matthias Aspden, deceased, should distribute the same.    From which several appeals were also taken.

On the 22d of December 1852, the Supreme Court of the United States affirmed the decree of Judge Grier, and remanded the case back for further proceedings in pursuance thereto.

On the 12th of February 1853, an agreement of parties, by their counsel, was filed in the cause, to allow Mr. Newbold and Mrs. Anna M. Tilghman, executrix of B. Tilghman, deceased, three and a half per cent. of the recovery, for services rendered by Mr. Newbold and Mr. Tilghman, in 1835, in reversing the decree of Judge Baldwin.

On or about the same time, there was a similar agreement of counsel to allow four per cent. of the recovery to the Hon. John M. Read, for his conduct and argument of the case, upon the last appeal.

On the 9th of February 1853, " on motion of Mr. Heiskell and Mr. Newbold, of counsel," Joseph Trotter, administrator, &c., was ordered to pay to Judge Read four per cent. upon thirty-two thirty-fifths of the fund then on hand.

On 17th of February 1853, " on motion of Bayse Newcomb and John M. Read, Esqs., of counsel, and agreements filed," three and a half per cent. on thirty-three thirty-fifths, and on thirteen twenty-fourths of another thirty-fifth, was ordered to be paid to Mr. Newbold and the executrix of B. Tilghman, deceased.

On the 18th February 1853, four per cent. of the fund (amount-

ing to $29,257.14) was paid by Mr. Trotter to Judge Read; and three per cent. of the fund (amounting to $26,833.30) was paid to Mr. Newbold and Mrs. Tilghman.

On the 14th March 1853, a surplus fund of $640,000 was ordered by Judge Grier to be paid over to the parties, or their solicitors for them.

. On the 23d of December 1853, there was still on hand an undistributed balance of $69,987.08, as shown by Mr. Trotter's statement or account of that date.

On the 18th of January 1854 (Mr. Trotter, the administrator, being then dead), there was a final decree of distribution, directing Mr. George Plitt (the clerk of the court) to pay over the balance of the fund to the parties therein named, or their solicitors.

On the 18th of January 1854, Mr. Newbold, as counsel for thirty-two of the heirs of Aspden, received from, and receipted to, Mr. Plitt for $26,849.08.

On the same day, Mr. Newbold and Mr. B. Newcomb, as counsel for two more of the heirs, jointly receipted to Mr. Plitt for $3190.

How much of the fund, on his own account, was actually received by Mr. Newbold, does not appear; but he represented at least thirty-three of the eighty-one parties to the Aspden suit, and nearly nineteen of the thirty-five thirty-fifths into which the fund was divided by Judge Grier.

The amount recovered in Packer v. Nixon was upwards of $800,000, none of which was ever paid to Mr. Webster or to his executors. Mr. B. Tilghman died May 30th 1850; Mr. Webster in October 1852. Letters of administration were not properly granted on Mr. Webster's estate until the 28th of November 1855. Those which first issued were illegal, and were treated as a nullity.

In April 1853, Mr. Josiah Randall, as counsel for Webster's executors, set up a claim upon the fund before the auditor of two and a half per cent. upon the amount of the recovery—which was disallowed.

He afterwards renewed the application, before Judge Kane, in the shape of a petition, which was presented on the 16th of January 1854, and argued and dismissed a few days after.

The first time Mr. Randall made a formal and specific demand for payment on the defendant, was on the 25th of June 1855, or shortly before. He told the defendant in 1853, that they held him responsible, under the contract, for the two and a half per cent. of the recovery; but he did not demand it at that time, because it was not then due.

The first suit against Mr. Newbold (which was prematurely and informally brought for want of security) was instituted on the 25th of June 1855, and discontinued on the 16th of January 1860, which was the same day this suit was brought.

[Webster's Executors *v.* Newbold.]

It was proven, that Mr. Newbold acknowledged (after the 16th of January 1860) that Mr. Webster was entitled to compensation, and that he was willing himself to pay something, but that the executrix of Mr. Tilghman would not consent to it. The sum of $2000 was spoken of, by all parties, as the amount that should be paid.

It was also proved, that Mr. Newbold or his counsel agreed to waive any informality in the first suit, which was the reason why that suit was not dismissed, and another suit brought in time to prevent all question as to the operation of the statute.

By an agreement of counsel in this case, all the printed records in Packer *v.* Nixon, and the various branches of that suit, were to be considered as evidence in this case, subject to all legal exceptions.

On the 29th of April 1853, Mr. Newbold was examined as a witness before the auditor, Mr. Thomas I. Wharton, in the case of Packer *v.* Nixon, in support of Mr. Webster's claim upon the fund, and his deposition, as there taken, was the evidence, and the only evidence here relied upon to prove the contract on which this suit was founded.

The substance of this testimony will be found in the argument of counsel, and in the opinion of this court.

The defendant offered no testimony, but insisted that there was no evidence of an agreement with Mr. Webster; that Mr. W. did not argue the case; that the motion made by him was suggested by Judge Story; and that the "acknowledgment" relied on amounted to nothing more than an expression of opinion as to what should be paid as a complimentary fee by all the parties.

The learned judge before whom the cause was tried at Nisi Prius, charged the jury as follows :—

"1. That the action on the special agreement should have been brought against the clients, whose counsel employed Mr. Webster, for, where the counsel of a party litigant employ an associate counsel to help them, they act as the agents of the client, and the contract established is between the client and the associated lawyer. Nor does it alter the rule in this case, if Mr. Webster was to be paid a third of the per centage agreed to be paid to Messrs. Newbold and Tilghman. The clients were bound to pay that third, or whatever the fee was, or to see that it was paid, and an action to enforce that contract should have been against them, and not against one of their agents, who entered into the contract for them.

"2. But, though the plaintiffs cannot recover against Mr. Newbold on the special contract alleged, I hold, that when one lawyer gets into his hands the fee which legally and equitably belongs to his colleague, an action of *indebitatus assumpsit* will lie to make him disgorge. If the jury believe that Mr. Webster

[Webster's Executors *v.* Newbold.]

was entitled, by virtue of the special contract, to receive two and a half per cent. of the amount recovered, and that two and a half per cent., or any part of it, have gone into Mr. Newbold's hands, it must be treated as money had and received to Mr. Webster's use, and his executors may recover it upon the common money counts of their declaration. If Mr. Webster was not entitled to two and a half per cent., but only to a *quantum meruit*, and Mr. Newbold has received his money, it may be recovered on the money counts. In estimating the *quantum meruit*, the jury are to attach no importance to the fact that Mr. Webster did not argue the cause in the Supreme Court of the United States, if he performed all the duties he was called to perform, and which the case required of counsel. He made one very telling suggestion, and, if that saved the cause, he is to be paid none the less, because he did not do more than was necessary to be done to save the cause.

"3. But the Statute of Limitations is pleaded, and, if the money was received by Mr. Newbold more than six years before this suit was brought, I see nothing to prevent the running of the statute, and I instruct the jury that it is a flat bar to the plaintiff's right to recover. The conversation of Mr. Randall with Mr. Newbold could not stop the running of the statute. The evidence seems to be, that Mr. Newbold received the money on the 18th of February 1853, more than six years before suit brought; and if the jury are satisfied of that, their verdict should be for defendant."

There was a verdict and judgment in favour of the defendant. Whereupon, on the application of the plaintiffs, the case was certified into the Supreme Court in banc, where the following errors were assigned:—

1. The learned judge erred in charging the jury that "the evidence seems to be, that Mr. Newbold received the money on the 18th of February 1853, more than six years before suit brought, and if the jury are satisfied of that, then their verdict should be for the defendant."

2. In charging the jury, that "the conversations of Mr. Randall with Mr. Newbold would not stop the running of the statute."

3. The learned judge decided questions of fact which were properly determinable by the jury, or at least withdrew them entirely from their consideration.

4. The verdict was contrary to the evidence.

*Harrison*, for plaintiffs.—The Statute of Limitations is no bar:

1. Because the contract between the parties created a trust which was not affected by the statute.

Mr. Webster was to appear in the case at Washington, and aid

in the reversal of the decree of the 26th of December 1833, which he effectually did. That was his part. After that, Mr. Newbold and Mr. Tilghman were to prosecute the suit to a final hearing, and to account to him for the recovery. This is the sense of the contract.

Mr. Webster, living in Massachusetts, is not presumed to have been aware of what was passing here. He had a right to expect his colleagues to apprise him of it. He had a right to regard them, under the circumstances, as mere trustees, or custodians for his benefit, until the trust was satisfied, or at least until notice to the contrary, which was not until the 25th of June 1855. As a general rule, no length of time will bar an express trust, so long as the fiduciary relation exists : Hill on Trustees, ch. 2, p. 264, and note 2 ; Decouche *v.* Savetier, 3 Johns. Ch. R. 190 ; 2 T. & H. 83. No more will the statute run against an implied or constructive trust, until the party knows, or is in a situation, at least, to know, what his rights are : Hill on Trustees 265. Whether express or implied, there must be an adversary possession, accompanied by proper notice, to defeat the trust : Johnston *v.* Humphreys, 14 S. & R. 396. Otherwise, once a trust, always a trust, until it is satisfied, or until there is a presumption of satisfaction from lapse of time.

2. Whether a trust or not, the Statute of Limitations did not commence to run against this claim of Mr. Webster, until the fund was all distributed, or until there was a final decree for its distribution, which was not until the 18th of January 1854—less than six years before the suit was instituted. Until then, all the money received by Mr. Newbold, whether on his own account or as counsel for the heirs, was liable at any moment to be refunded, and by a mere order in the cause to that effect.

3. The court erred in confining the jury to the money which was paid to Mr. Newbold on the 18th of February 1853, and in excluding from their consideration the payments which were made to Mr. Newbold on the 18th of January 1854.

4. No cause of action accrued here during the lifetime of Mr. Webster, and the Statute of Limitations did not commence to run, after his death, until administration was granted on his estate—which was not until the 28th of November 1855—less than six years before the commencement of this suit. See Johnston *v.* Humphreys, 14 S. & R. 395 ; Levering *v.* Rittenhouse, 4 Whart. 139 ; Shaeffer's Estate, 9 S. & R. 266 ; Ruff's Administrator *v.* Bull, 7 Harr. & J. 14 ; Fishwick *v.* Sewell, 4 Id. 393.

Until after the death of Mr. Webster, neither Mr. Newbold nor Mr. Tilghman had received one cent, nor was there any recovery for the heirs. Judge Greer's decree in favour of the heirs was rendered on the 11th of November 1850; but was not

[Webster's Executors v. Newbold.]

affirmed until the 14th of December 1852, after the death of Mr. Webster.

5. The Statute of Limitations does not commence to run against the claim of an attorney for professional services, until a demand for it has been made by him (which was not made in this case until the 25th of June 1855), or until the money in suit has all been paid, which was not until the 18th of January 1854: Foster v. Jack, 4 Watts 334. Until the 16th of January 1854 (or until his petition was dismissed by Judge Kane shortly after), Mr. Randall, as counsel for the plaintiffs, was endeavouring to establish a lien for the fee, upon the fund in court.

He apprised the defendant, in 1853, that they held him responsible for its payment—that is, if they failed to get it (as they were trying to do) out of the fund itself; but the first time that any formal and authentic demand for payment was ever made on the defendant, was on the 25th of June 1855, when the first suit was instituted by Mr. Randall, or a few days before. Prior to that, it was the mere assertion of a claim, not a demand for payment. Payment, in fact, was not demandable until the 18th of January 1854, and if demanded before, it would have bound neither party. Until then—until the plaintiffs had "an immediate possessory title to the beneficial interest, no length of acquiescence could affect them:" Hill on Trustees 266.

6. An acknowledgment was proved within six years, which was sufficient to take the case out of the statute: Fries v. Boisselet, 9 S. & R. 131; Davis v. Steiner, 2 Harris 275; Hazlebaker v. Reeves, 2 Jones 264; Cowan v. Magauran, Wallace, Sr. 66.

7. It was proved that Mr. Newbold (or his counsel) agreed to waive any informality in the first suit, which was brought in time. If so, he had no right after that to plead the statute: Pickard v. Sears, 6 A. & E. 475; Howard v. Hudson, 75 E. C. L. R. 10; Commonwealth v. Moltz, 10 Barr 527; Sergeant's Executors v. Ewing, 6 Casey 81.

These authorities make out a clear case of estoppel. The learned judge seemed to think that the plaintiff's remedy here, if any, was by another suit, and not by way of estoppel in this suit. Why resort to two suits instead of one, to accomplish the same result? The plaintiff may reply fraud in avoidance of the statute: Bank of Harrisburg v. Foster, 8 Watts 12. So, under the general replication to a plea of the statute, he may offer evidence of a fresh promise or an acknowledgment of the debt within six years: 2 T. & H. 89. Is it not equally competent here to set up, as an estoppel to the statute, any agreement which would have the effect of avoiding the operation of the statute in another suit? The estoppel, in fact, may well exist in one suit, when the matter to which it relates would be barred as cause of action in another. As an estoppel in pais, it was not necessary

[Webster's Executors *v.* Newbold.]

to be specially pleaded: Freeman *v.* Cook, 2 Ex. 662; 1 Wms. Saund. 326, n. 2; Davis *v.* Thomas, 5 Leigh 4.

*McAllister* and *Northrop*, for defendant.—On the trial of this case defendant's counsel raised these points :—

" 1. That the contract, if any there was, was between Mr. Webster on the one hand, and Messrs. Tilghman, Newbold *et al.*, on the other, as agents of the heirs, and that the suit should be against the heirs.

" 2. That there was no proof of any service rendered by Mr. Webster.

" 3. That if there was any liability on the part of Mr. Newbold, it was a joint liability, and the action should be against Messrs. Tilghman, Newbold, and Read, or at least against Mr. Read and Mr. Newbold, who survived.

" 4. That the amount received by Mr. Newbold being 1¾ per cent., or one-half of 3½ per cent., was received for his own use; that it was not paid to him in trust, nor received by him in trust.

" 5. That if he was liable, the Statute of Limitations commenced to run from February 18th 1853, when he received his 1¾ per cent., and that the six years had fully expired before the commencement of this suit on January 16th 1860.

" 6. That any payment which was made to him after February 18th 1853, was made to him as counsel for certain heirs.

" 7. That the plaintiffs themselves never thought of suing Mr. Newbold until after they had alleged that their claim was against the fund, and had appeared before the master, T. I. Wharton, Esq., who was appointed to report upon the claims on the remainder of the fund in the hands of the trustee, claimed this fee and been refused." And we rely on them here.

We also rely on the report of the master, by whom, after an examination of all the evidence relative to this claim on the fund, decided that there was none which would warrant him in allowing it.

There was no payment to Newbold in trust, nor did he receive anything in trust. Johnston *v.* Humphreys, 14 S. & R. 396, cited for plaintiffs, is a totally different case. The party there acknowledged that he held the money in trust. Trusts are either express or implied. The express trust is, where the matter is given to or received by any one with the expressed agreement that it is to be for another.

An implied trust is a matter of intent. There is here no evidence of any intent to the effect claimed by the plaintiffs.

The plaintiffs aver that the statute began to run on January 18th 1854, and must either claim on the fund of the heirs, which

claim was done before Mr. Wharton, and refused; or they must claim as against Newbold *et al.* for what they received.

Nothing was received by Newbold *et al.* for themselves or either of them, after February 18th 1853.

The master's report shows that the plaintiffs presented their claims March 14th 1858, by which they considered the matter completed.

The cause of action accrued before March 14th 1853, for at that time Mr. Randall appeared before Mr. Wharton, for the executors of Mr. Webster, and made demand for this very claim.

As to the acknowledgment within six years, Mr. Randall only proves that an amount was vaguely suggested, without authority from other parties interested, and was refused. It was not the original claim.

Mr. Newbold did not agree to waive the Statute of Limitations, as is averred. If Mr. Newbold agreed to waive any informality in first suit, why did plaintiffs discontinue it, and bring another?

Beside, this evidence, vague as it is, was applicable to the discontinued suit, and not to this. If the plaintiffs' allegations are correct under this head, their action should be against Mr. Newbold for that breach of contract. They cannot take issue on the plea of the statute, and then deny our right to plead it.

The opinion of the court was delivered, February 4th 1862, by

THOMPSON, J.—On the trial at Nisi Prius, my brother Woodward, presiding, held that the plaintiffs could not recover on the special agreements set forth in the *narr.* No exception was taken to this ruling, and this left the case upon the general counts for services, and for money had and received. The pleas were *non assumpsit*, payment with leave, and the Statute of Limitations.

The errors assigned are all to the charge of the court, and the first is, in saying " that the evidence seems to be that Mr. Newbold received the money on the 18th of February 1853, more than six years before suit brought, and if the jury are satisfied of that, then their verdict should be for the defendant."

The records of the Circuit Court show that that was the day on which the defendant received all the fees which were received by him out of the share of his clients of the Aspden estate. It was ordered to be paid as fees by the Circuit Court. Any sums paid to him afterwards, by order of the court, were for the benefit and use of his clients. This receipt of fees was of the date mentioned in the charge, and was truly said to be more than six years before suit. The statute being pleaded, was therefore a bar to a recovery, unless rebutted. This was attempted by alleging a trust in the defendant for a share to Mr. Webster; secondly, an acknowledgment of a debt sufficient to prevent the operation

[Webster's Executors *v.* Newbold.]

of the statute; and thirdly, by raising the point here that administration was not granted in this Commonwealth, until within six years before suit brought.

As to the first of these answers to the statute, we may say we see no evidence of an express trust in the case. If Messrs. Newbold, Tilghman, and Webster were to share the fees to be received in equal proportions, and the two former received the whole sum, this, without more, would be only one step towards establishing an express trust, and good for nothing without an agreement or declaration to hold it in trust. There was nothing of that. There was no allegation that it was an implied trust arising *ex maleficio*. If Mr. Newbold did receive a share which, in equity and good conscience, should have belonged to Mr. Webster, this was not such a trust as would prevent the statute from running. The rule is settled that the statute is inapplicable only to express trusts, or those which are mere creations of courts of equity, with some exceptions of implied trusts in favour of infants, and perhaps other cases of legal incapacity; but "trusts," as was said by Washington, J., 4 W. C. C. Rep. 631, "which are the ground of an action at law are within it." See, also, 1 Watts 275; 1 W. & S. 112; 4 Barr 56; 7 Id. 31; 12 Harris 52. There being at most but a receipt of the money claimed as belonging to Mr. Webster's estate, if there was any trust it belongs to this last class. It was not a trust *ex maleficio*, by reason of fraud or concealment. The receipt for the fees was perpetuated by the records of the Circuit Court. Besides, too, the executors engaged Mr. Randall before he left Marshfield, whither he had been attending the funeral of Mr. Webster, to look after this matter, and in pursuance of which he did speak to Messrs. Newbold and Tilghman on the subject, and no concealment was resorted to by either of them, in regard to the receipt of counsel fees.

We also entirely concur with our brother Woodward, that there was not sufficient in the Randall testimony to be left to a jury, from which to find a promise by the defendant to pay any sum of money on account of the professional services of Mr. Webster. He expressed a willingness to pay something if other parties would also. They refused, and Mr. Randall says " Mr. Newbold's proposition fell." Promises to pay and acknowledgments of indebtedness, to take a claim out of the Statute of Limitations, must be explicit in their terms, and unambiguous, both as to the engagement or acknowlegment, as also to the sum of money intended to be paid or acknowledged: 2 Harris 319; 7 Id. 388; 9 Barr 410; 4 Id. 321; 6 W. & S. 213. This view not only answers the second inquiry, under the first assignment of error, but also the second assignment. The position was taken here, for the first time in the case, that the Statute of

[Webster's Executors *v.* Newbold.]

Limitations was no bar to the plaintiffs' recovery, because administration had not been granted when the cause of action accrued. It is certain that administration must have been granted in Massachusetts about if not before that time, for in the forepart of March 1853, it is in proof that a claim was proposed, in the name of the executors, before an auditor having charge of reporting distribution on the Aspden estate. What effect that might have on the question of no administration here, it is not necessary to decide, for that fact was not replied to the plea of the Statute of Limitations; and in Shaeffer's Estate, 9 S. & R. 263, Duncan, J., expressly says that it should be replied. So in Groghegan *v.* Reed, 2 Wh. 152, "non resident" and beyond seas was replied to the plea of the statute. In Brown *v.* Agnew, 6 W. & S. 235, it was said by Sergeant, J., "the burden lies on him who seeks to avoid the plea of the Statute of Limitations to an action of account render or *assumpsit,* by the replication, that it was an account between merchant and merchant, and the replication to such plea must go further, and state that no account of said merchants was ever adjusted or settled: Godfrey *v.* Saunders, 3 Wilson 79, 80; 3 Wm. Saunders 127, note." So in Bevan *v.* Cullen, 7 Barr 281, it was holden, Rogers, J., delivering the opinion of the court, "that, in order to prevent the operation of the Act of Limitations," where the party has been beyond seas, "the exception to the bar of the statute must be specially replied," and he cites Clark *v.* Hoyham, 2 Barn. & Cress. 149; 3 P. Williams 144, and Brown *v.* Agnew, 6 W. & S. 238. No special replication of non-administration is to be found in this record; consequently the question sought to be raised here is not raised in the pleadings, and is not properly before us. The authorities cited simply embody the familiar principle, that he who would bring himself within an exception of the law must plead the exception, and thus make way for proof of the fact by himself, and an answer to it by his opponent. We think, therefore, that none of the reasons, suggested in argument, proves error in the charge of the court on the question of the Statute of Limitations.

. The two remaining assignments are general errors, which we cannot notice. They point to nothing specific.

Judgment affirmed.

READ, J., did not sit in the argument of this case.