## Mattern *versus* McDivitt, Administrator of Whitesel, Deceased.

1. The accounts which are excepted from the operation of the Act of March 27th, 1713, Sm. L., 76, Statute of Limitations, are " such accounts as concern the trade of merchandise between merchant and merchant, their factors or servants." These may include labor or anything that is provable by book of original entry. Such accounts on one side are not enough. A demand on the other side founded on anything else than " such accounts as concern the trade of merchandise " is not sufficient to bring the account of the other side within the exception.

2. Professional services as attorney at law are not the subject of " such accounts as concern the trade of merchandise," and will therefore not bring an account of the other side within the exception of Statute of Limitations.

3. Under a rule of Court which provides that if the plaintiff shall verify his book account filed with his declaration by his affidavit, it shall be evidence unless the defendant file his affidavit stating that he believes injustice will be done him unless the plaintiff be compelled to produce his books and subject himself to cross-examination; an administrator may make the affidavit, verifying the book account of the decedent without giving the source of his information.

May 24th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Huntingdon county:* Of January Term 1885, No. 257.

Debt, brought by Nathan G. McDivitt, administrator of David Whitesel, deceased, against John W. Mattern, May 22d, 1882. Pleas, nil debet, payment with leave, *actio non accrevit infra sex annos.*

The action was on a book account running from November 21st, 1867, to June 18th, 1879, amounting to $484.06, with no credits whatever.

The plaintiff filed with his declaration a statement of the book account of the decedent, upon which the suit was brought,

[Mattern v. McDivitt, Adm'r.]

verified by his affidavit in the language of the following rule of Court:

When the action is brought in whole or in part on a book account, if the plaintiff shall file with his declaration a copy of his book entries, with a statement of the credits to which he admits the defendant to be entitled, verified by an affidavit setting forth that the copy of the charges filed is correctly taken from the plaintiff's book of original entries; that such charges were made at or about the time of their respective dates; that the goods were sold and delivered, or the work done, at or about the time the charges were made in the book; that the charges are correct, and the account just, and that the defendant is not entitled to any credits or to any other than there given—the account shall be deemed admitted, and, on the trial, such copy and statement, so verified and filed, shall be read to the jury, and shall be evidence of all such items as the book or books, if produced and duly proven, would be evidence; unless the defendant before or at the time of putting in his plea shall file his affidavit that he verily believes injustice will be done to him, unless the plaintiff be compelled to produce his books, and subject himself to a cross-examination, or held to strict proof of his claim; in which case such verified statement and copy shall not be received as evidence.

The defendant did not file an affidavit. On the trial the copy of the book account, filed with the declaration, was offered in evidence and admitted under objection.

The following are the facts of the case as they appeared on the trial, before Hoy, P. J.;

David Whitesel was a farmer, who resided about ten miles from Huntingdon. He died in June, 1881.

John W. Mattern is an attorney, practising his profession and residing in Huntingdon. For twenty-four years before the death of Whitesel, he acted as such attorney for him in all of his legal business, and since 1867 has kept no account against Whitesel.

From 1867 Mattern rendered him occasional services, and paid cash to him at different dates for produce purchased of him during that time. None of the payments thus made by Mattern were credited by Whitesel, although Mattern holds some receipts and checks for them.

In 1877 Whitesel became involved in litigation. He employed Mattern to defend him, which he did. Mattern never received any compensation for these services, except the sum of $57.07, as per his account against Mattern during that time. Nor did Whitesel make any demand upon Mattern for the

[Mattern *v.* McDivitt, Adm'r.]

amount of $57.07, or any other account, as claimed in this action by his administrator.

After the death of Whitesel, N. G. McDivitt administered on his estate.   Mattern failed to agree with the administrator as to the value of these professional services, rendered in connection with these suits, which was not liquidated or settled in the lifetime of Whitesel with him, and this suit was brought.

The Court charged the jury as follows :

This is an action of debt brought by N. G. McDivitt, administrator of David Whitesel, deceased, against John W. Mattern to recover on book account of the decedent, against this defendant.   A copy of the account was made out and sworn to by the administrator, and filed with the declaration in this suit.   That copy of account under the Rules of Court in this county, has been admitted as evidence in this case.   That is the evidence which is before you, and upon which you are to found your verdict.   It appears from this account that it commenced as early as November 21st, 1867, and closed on June 1st, 1879.   There are no credits entered upon this account. The defendant has put in the plea of payment, with the right to give in evidence any other special matter, and the plea of the Statute of Limitations.   The plea of the Statute of Limitations is a legal plea.   The Act of Assembly gives a man a right to interpose that plea against all accounts over six years old.   The Statute of Limitations assumes that all accounts over six years standing are liquidated and thus are barred, unless a new promise is shown within six years, or some other transaction took place between the parties, which would stop the running of the statute.   It is a purely legal plea, and all men do not admit that it is an honest one, in all cases, but with such opinions Courts have nothing to do ; it is the law of the Commonwealth and we must administer it as we find it.

[It is argued here that there were payments and credits on this account which would take it out of the statute, and receipts that are within the knowledge and in possession of the defendant.   The defendant admitted on the witness stand that he had receipts from this plaintiff, intestate, David Whitesel.] (First assignment of error.)

Mr. Whitesel is dead and cannot appear before you, gentlemen of the jury, to give his version of the affair.   If he were here there would be less difficulty in arriving at what is the truth and real facts connected with the account, and these receipts, if produced, might throw much light upon it.   But the receipts were not produced.   He admitted on the stand that he had them, and on request of counsel for plaintiff to produce them, refused to do so.   This conduct we say, gentle-

men of the jury, is for your consideration. It is a very pertinent inquiry in a case like this, we think, whether it is honest and fair for a lawyer, who is the defendant, to go upon the stand and admit under oath that he has receipts in his possession of a man that is dead and refuses to deliver them in court at the trial. It certainly does not go to show that he desired a fair and equitable trial of the case. [Where a man admits that he has papers in his possession that will throw light upon and explain accounts and papers of a dead man's estate, and refuses to produce them when called upon for the purpose, such conduct is neither fair, just nor honest; and we say to you that we have no patience with such conduct and think it is highly reprehensible.] (First assignment of error.) Courts cannot and will not, we think, encourage any such conduct as that. There was, however, no way, as the case was presented, to compel the defendant to produce the receipts, or it would have been done. We do not think it is creditable in anybody to withhold that which might throw light on a case of this kind on the one side or the other. It is a question whether jurors of Huntingdon county want estates of decedents settled up in that way. If the accounts between a decedent's estate and Huntingdon county lawyers are to be settled as is attempted in this case, the farmers and citizens of the county, who bring produce here to market, will hereafter carefully avoid selling to lawyers, and if they do, will require them to pay for it when the goods are delivered, or take their notes or equivalent in cash, and not leave such accounts for their administrators or executors to settle—and we say frankly to you it should not be tolerated if it can be prevented.

Now, gentlemen of the jury, as this case is presented, we take this view of it: The defendant here sets up a claim for professional services rendered for this decedent during his lifetime. He is entitled to set up such a claim, and it would be a legal defence to the amount, whatever you find those services to be worth. I do not propose to pass any opinion upon the value of those services, because that is a question for you under the evidence; [but we say according to the record and evidence those services closed on the 12th January, 1880; at that time John W. Mattern had a claim against David Whitesel for services. So far as the record and the evidence in this case show, that was the end of his services rendered to this decedent.] (Second assignment of error.)

He had a right to call upon the plaintiff in this case and demand payment for such services; he had also the right to give in evidence, in this case, after the administrator had brought suit against this defendant, the value of the services rendered; and he also had the right of action against

the estate of David Whitesel, upon the payment being refused for the value of his services in those suits that were brought against David Whitesel, and the administrator could have set up this account as payment for those services or set-off to his account; and he could have given anything in evidence from the books of the decedent, or accounts of decedent, for at least six years back from that time. Now, we say to you, gentlemen of the jury, that on the 12th January, 1880, John W. Mattern, this defendant, had a claim for his services against this estate for whatever they were worth. That must be applied as a set-off against the claim which the plaintiff had against him, if you believe the evidence of the defendant. And [the plaintiff would be entitled to recover, in this case, whatever his account amounts to for six years back from the 12th January, 1880, which would take you back to January 12th, 1874. You will go back to that time and include all the accounts up to the 12th January, 1880.] (Third assignment of error.)

If you will examine the accounts you will find there were no charges in 1874, prior to the 4th of April of that year. The first charge made in 1874, was on the 4th of April, and from that time up until the 12th January, 1880, is the time the account runs; and whatever that account amounts to from the 4th of April, 1874, up to the time it closed, which we figure it to be $240.90—but you must make your own calculation and find what the amount is—[but as we figure it, beginning with the 4th April, 1874, and adding it up to the time the account closed, we make it $240.90, and if you so find it from this you must deduct whatever entries there are for cash payments made by the decedent to Mattern, as that amount includes these cash payments, which amounted in all to $26.25; that deducted from $240.90 would leave $214.65,—that would be the amount, if you so find it to be, that would be out of the Statute of Limitation.] (Fourth assignment of error.) Now, from that, gentlemen of the jury, you will deduct whatever you find the defendant's services were worth, whatever that may be under the evidence, and then add interest on the balance, such as he would be entitled to, which would be at least from the close of the account up to the present time, and render a verdict for the plaintiff for whatever that amounts to.] (Fifth assignment of error.)

If you should find his services were worth more than the account of the plaintiff amounts to, then of course you cannot find for the plaintiff; but your verdict in that event must be for the defendant; and you will then certify whatever is in excess of the plaintiff's claim. In that event, your verdict will be : we find for the defendant, and that there is so much

[Mattern v. McDivitt, Adm'r.]

due from the plaintiff to defendant. But if you find his services were not worth $214.65, (if you find that to be the correct amount) then you will deduct whatever you find his services to be worth; and on that balance add interest from the time the account closed up to the present time, and render a verdict in favor of the plaintiff for that amount.

Verdict for the plaintiff in the sum of $231.11 and judgment thereon, whereupon the defendant took this writ assigning for error the admission of the copy of book account filed with the declaration as above shown in evidence, and those portions of the charge inclosed within brackets.

*R. Bruce Petrikin (John W. Mattern* with him), for plaintiff in error.—The copy of the account filed with the declaration should not have been admitted in evidence.

Although in this case, the form of the affidavit was followed, yet, substantially. it was not so, upon the very face of it, unless it had first been shown that the administrator had such personal knowledge that he could knowingly make it, at the time thereof; and failing first to show that he had such knowledge, when thus objected to, and not being truly a compliance with any rule of Court, or that of No. 68, it should not have been admitted in evidence, and therefore was an inconsistent and palpably erroneous construction of the rule. This was specially so, when afterwards, as shown by the testimony of the administrator himself, he failed to prove the required essentials of his affidavit thus made, and the book from which he had made the copy of the account was not, when produced and offered in evidence to substantiate it, in the trial of the suit, admitted by the Court.

The Statute of Limitations was well pleaded.

The fact that Mattern had a claim for services, which were within the statutory period, had nothing whatever to do with the cause of action, as it had accrued when this suit was commenced, on the 22d day of May, 1882, on the part of Whitesel's administrator. The statute fixed the time when, and limited it "to within six years next after the cause of such action or suit had thus accrued," on the part of Whitesel, and not when, as charged by the Court, Mattern's services were ended on the 12th January, 1880, (or his professional relation dissolved or terminated by Whitesel's death, on the 10th of June, 1881.) And yet the Court say positively and so instruct the jury, as set forth in the 3d specification of error, instead of instructing them, that they can only do so, under the statute, from the 22d of May, 1882, when this suit was commenced, and plaintiff's cause had accrued accordingly, and so fixed and limited by the very words, "shall be commenced and sued

within the time and limitation hereafter expressed, and not after," of the 1st sec. of the Act of March 27th, 1713. By so instructing the jury the Court made it depend upon another and entirely different period of time than as thus expressed in the statute, and the claim of the defendant as of the date of January 12, 1880, who had commenced no suit, and was only defalcating his claim within the six years against that of the plaintiff within the same time, as admitted by the Court he had the right to do, and by so instructing the jury, defeated the legal right of the defendant under his plea of the Statute of Limitations : Sec. 1, Act 27th March, 1713, and our adjudicated cases under it of Hay *v.* Kramer, 2 W. & S., 137 ; Lowber *v.* Smith, 7 Penn. St. R., 381 ; Marseilles *v.* Kenton's Exrs., 17 Id., 238 ; Ingram *v.* Sherard, 17 S. & R., 347 ; Adams *v.* Carrol & Co., 85 Penn. St. R., 214 ; Overton *v.* Tracy, 14 S. & R., 328 ; Evans *v.* See, 23 Penn. St. R., 88 ; Wickersham *v.* Russell, 51 Id., 71 ; Foster *v.* Jack, 4 W. 334 ; Lichty *v.* Hugus, 55 Penn. St. R., 434 ; Chambers *v.* Marks, 26 Id., 296 ; Hale's Exrs. *v.* Ard's Exrs., 48 Id., 22.

*John M. Bailey (J. R. Simpson* with him), for defendant in error.—The copy of the account filed with the declaration was properly admitted in evidence.

Courts are the best exponents of their own rules, and their construction is accepted by the higher Court as conclusive : Dailey *v.* Green, 3 Harris, 118–128 ; Coleman *v.* Nantz, 13 P. F. S., 178 ; Garrison *v.* Fritz, 29 Id., 303.

Under a rule of court somewhat similar, the Common Pleas of Allegheny County admitted in evidence copy of a decedent's book account verified by affidavit of his administrator : See McCloy *v.* Maffett's Administrators, 9 P. F. S., 344.

An administrator may make the affidavit : Schupp *v.* Schupp, 17 W. N. C., 236.

The Statute of Limitations was not well pleaded.

The court held in substance precisely the rule with relation to " mutual accounts " as is laid down in the cases cited in plaintiff's paper book : that, to take an account out of Statute of Limitations that would be otherwise barred by it, " there must be mutual demands : each party must have a demand or right of action against the other " : Adams *v.* Carroll, 4 Norris, 209.

It is settled that in Pennsylvania an attorney has a right of action for his professional services : Balsbaugh *v.* Frazer, 7 Harris, 95.

Notwithstanding the evidence of a reciprocal demand was introduced by defendant, it becomes evidence for the plaintiff : Moses *v.* Bradley, 3 Whart., 272 ; Porter *v.* Seiler, 11 Harris, 424.

[Mattern v. McDivitt, Adm'r.]

The Court held that the defendant had a right of action against plaintiff from the 12th of January, 1880, and confined our right to recover to a period only six years anterior to that date. This we contend did a greater wrong to the plaintiff below than to the defendant, because " where there have been mutual accounts between the parties within six years, the Statute of Limitations does not apply to any part of either account": Chambers v. Marks, 1 C., 296 ; Van Swearingen v. Harris, 1 W. & S., 356.

We alleged at the trial that if these receipts were shown they would take our whole claim out of the Statute of Limitations.

Where a party suppresses evidence in his power the presumption is that if produced, it would make against him : Church v. Church, 1 Casey, 278.

Testimony often consists in what is not proved as well as what is proved : Frick et al. v. Barbour et al., 14 P. F. S., 120.

Mr. Justice TRUNKEY delivered the opinion of the Court, October 4th, 1886.

" All actions upon account, and upon the case, other than such accounts as concern the trade of merchandise between merchant and merchant, their factors or servants," shall be commenced or sued within six years next after the cause of such action or suit, and not after. This limitation in the statute of 1713 is in identical phrase with the statute of 21 James I., c. 16, upon the same subject, and had the Courts construed it in accord with the legislative will as expressed, there would have been no difficulty in understanding it in the same way as it was finally understood in England when it was settled that a transaction will not constitute an account, within the meaning of the exception, unless it is such that it would sustain an action of account, or an action on the case for not accounting : Inglis v. Haigh, 8 M. & W., 769 ; Cottam v. Partridge, 4 Scott N. R., 819.

In commenting upon the Statute of Maine, the exception being in the same words, Chief Justice MARSHALL remarked : " It may reasonably be conceived that the legislature had in contemplation to except those actions only for which account would lie. Be this as it may, the words certainly require that the action should be founded on account. The account must be one which concerns the trade of merchandise. It is not an exemption attached to the merchant merely as a personal privilege, but an exemption which is conferred on the business as well as on the persons between whom that business is carried on. The account must concern the trade of merchandise ; and this trade must be not an ordinary traffic between a mer-

chant and any ordinary customers, but between merchant and merchant. This trade of merchandise which can furnish an account protected by the exception, must be not only between merchant and merchant, but between the plaintiff and defendant: " Spring *v.* Gray's Executors, 6 Peters, 151.

While the decisions of this Court upon the statute are to be followed, it is well to keep the statute itself in view, not only for better understanding of judicial expression, but for guidance on points not yet adjudicated.

Among the cases relied on by the plaintiff to sustain the ruling of the Court below, is Van Swearingen *v.* Harris, 1 W. & S., 356, where the entire opinion touching the interpretation of the statute is as follows: " Where there are mutual demands, if any item of such account be within six years before the commencement of the suit, such item is deemed equivalent to a subsequent promise reviving the debt. . . . . . It takes the case out of the statute, and it is immaterial whether the parties are merchants or not, as it goes on the ground of implied promise." The latest case cited by him, Adams *v.* Carroll, 85 Pa. St., 209, rules " that to constitute mutual accounts there must be mutual demands. And the exception to the statute has no application where the demand is altogether on one side, although payments on account have been made. He also refers to Chambers *v.* Marks, 25 Id., 296, which reiterates that where there have been mutual accounts between two persons within six years, the statute does not apply to any part of either account ; and it is added that a credit to have the effect of taking an account out of the operation of the statute must be proved to have been intended as a payment on the account.

It is manifest that the word demand in the cases cited is used in the sense of " account." It was never meant that when there was an account on one side that a demand on the other, founded on note, bond, record, or the like, constituted mutual accounts between the parties within the exception. In Lowber *v.* Smith, 7 Pa. St., 381, the subject of the exception is defined thus : " A mutual account is when each has a demand or right of action against the other, as, for example, when A. and B. dealing together, A. sells B. an article of furniture, or any other commodity, and afterwards B. sells A. property of the same or a different description ; this constitutes a reciprocal demand, because A. and B. have a demand or right of action against each other. But this is not so when the sale is only by one to the other, whether it is to be paid for in cash or in kind ; the manner of payment can surely make no difference. Nor will an overt payment alter this result." As defined, the account on each side relates to trade

[Mattern v. McDivitt, Adm'r.]

in merchandise. This may include labor, or anything that is provable by book of original entry. Such account on one side is not enough. A demand on the other side founded on anything else " than such accounts as concern the trade of merchandise," is not sufficient to bring the account of the other within the exception.

The plaintiff's account consists of more than two score of items, beginning November 21st, 1867, and ending June 18th, 1879. There is no proof that during all that time the defendant sold and delivered anything to the plaintiff, which is the subject of account as the word is used in the statute. There is testimony tending to show that the defendant performed professional services, as attorney at law, for the decedent in his lifetime, the value of which he claims as a set-off. These services were rendered in suits at law, begun in 1877, and the Court below assumed that the relation of attorney and client ceased on January 12th, 1880. If this was so, the defendant's right of action for the value of the services accrued on that date : Foster v. Jack, 4 Watts, 334 ; Lichty v. Hugus, 55 Pa. St., 434. Is such a demand an account that concerns the trade of merchandise ? No decision of this Court compels us to say so, and in the teeth of the statute to declare that it takes the plaintiff's account out of its operation. The plaintiff's demand is for a particular service which no more constitutes an account than would a demand for loaned money. If not sued, or pleaded as a set-off, within six years from the time it became due, the statute would bar recovery. It had no effect upon the running of the statute against the plaintiff's account. Mutual demands, or debts, do not extinguish each other. Nor does either prevent the statute running against the other, unless both are such accounts as bring the case within the exception.

We discover no evidence to justify the Court in instructing the jury that the defendant's services closed and he had a right of action on the 12th of January, 1880. But this is of little moment. The grave error was in instructing the jury that the case came within the exception in the Statute of Limitations. The second, third, fourth and fifth specifications of error are sustained.

The extracts from the charge set out in the first assignment were more likely to prejudice the jury against the defendant when read with the context than if read by themselves. The portion of the charge where these extracts occurred was well calculated to lead the jury to consider the Court's opinion of the defendant's conduct, that it was unfair, unjust, dishonest and highly reprehensible, and that Courts will not encourage any such conduct. Moreover, the jury must have understood

that there was no way to compel the defendant to produce books and papers containing pertinent evidence, " or it would have been done." Of course, the learned judge knew that the plaintiff had been content in serving a notice on the defendant to produce books and papers, which merely laid ground for him to prove contents in case they were not produced ; and no steps had been taken for an order to produce such books or papers. The denunciation of the defendant by the learned judge was uncalled for by anything in the testimony or record, and must have had a tendency to mislead the jury from the evidence to the Court's expressions respecting the defendant's conduct : Stokes *v.* Miller, 10 W. N. C., 241 ; Linn *v.* Commonwealth, 96 Pa. St., 285.

There was no error in the admission of the copy of the account which was filed with the declaration, as provided by the rule of Court.

Judgment reversed and *venire facias do novo* awarded.