## Schwarz Estate

774

*Jackson D. Magenau,* for accountant.

*Quinn, Leemhuis, Plate & Dwyer* and *Bernard F. Quinn,* for claimant.

ROBERTS, P. J., November 15, 1957.—Decedent died testate on May 11, 1956, his 83rd birthday. His will dated March 25, 1949, was duly admitted to probate on May 29, 1956. The first and final account was filed January 12, 1957, showing a balance for distribution of $2,865.87. The account was called for audit on February 25, 1957, and the claim now before us was then first presented.

Claimant, Erie Wholesale Grocery Company, seeks to recover $2,724.08, the balance shown to be due as of March 23, 1937, on a book account. That account is for merchandise purchased by decedent for resale in his grocery store from 1927 to March 23, 1937. Thereafter and until he retired from the grocery business on April 30, 1948, decedent was on a cash basis for current purchases from claimant.

In 1927 claimant corporation issued two shares of its $50 par common stock to decedent, in whose name the shares appear on its books. The stock certificate provides that neither stock transfer nor payment of dividends would be made while shareholder was indebted to claimant. No dividends were paid to decedent, and dividends declared, since issuance of stock, were merely re-

corded by claimant in its stockholder's ledger as applicable to this stock, the accumulated · dividends now being $145.80. The record does not disclose that decedent was aware or informed of dividend declarations; nor does it appear that the fiduciary or sole beneficiaries (daughters) had knowledge of the two shares of stock or of any declared or accumulated dividends thereon. Neither the shares nor dividends were listed in the inventory or fiduciary account.

The estate resists payment of the 20-year old claim as barred by the statute of limitations. It is claimant's position that the grocery book account, inactive since 1937, and the dividends declared on decedent's stock and recorded in its stockholder's ledger, in view of the certificate provision prohibiting transfer or payment of dividends while shareholder was indebted to corporation, constitute a mutual running account. If these transactions create a mutual account then the statute is not here applicable and claimant is not precluded from recovery: 6 Williston on Contracts, secs. 2022 and 2030. In Mattern v. McDivitt, 113 Pa. 402, 410, the court said: ". . . where there have been mutual accounts between two persons within six years, the statute does not apply to any part of either account; . . ."

In Arnold v. Arnold, 14 D. & C. 662, relied upon by claimant, it is said, at page 664, to constitute a mutual account: "The account on both sides . . . must have originated between them, and the parties must have dealt with each other in the same capacity or relation: . . . the account must be continuous, open and current. A mutual account is one based on a course of dealing wherein each party has given credit to the other in reliance on the understanding that upon settlement each side of the account will be allowed, so that one will reduce the other."

In discussing mutual accounts the court said in Mattern v. McDivitt, supra, at page 410 : ". . . a credit to have the effect of taking an account out of the operation of the statute must be proved to have been intended as a payment on the account. . . . It was never meant that when there was an account on one side that a demand on the other, founded on note, bond, record, or the like, constituted mutual accounts between the parties within the exception."

The exception is explained in Lowber v. Smith, 7 Pa. 381 at 383: "A mutual account is when each has a demand or right of action against the other, as, for example, when A. & B. dealing together, A. sells B. an article of furniture, or any other commodity, and afterwards B. sells A. property of the same or a different description; this constitutes a reciprocal demand, because A. and B. have a demand or right of action against each other. But this is not so when the sale is only by one to the other, whether it is to be paid for in cash or in kind; the manner of payment can surely make no difference. . . ." The Mattern case, supra, defined a mutual account as relating to trade in merchandise on both sides; such an account on only one side is not sufficient, and if founded on either side on anything other than trade of merchandise, would not be mutual accounts within the exception.

Here the grocery book account and the dividend declarations viewed in the light of the ruling authorities do not constitute mutual accounts within the meaning of the exception to the statute of limitations. The transactions on one side only involve trade in merchandise and on the other, declaration of corporate dividends. The book account was closed by claimant on March 23, 1937, and thereafter no credit was extended by claimant to decedent; without extension of credit by each party to the other there exist no mutual accounts. Claimant having terminated the open or current ac-

count in 1937 by withholding future credit, the book account reflected only purchases prior to 1937 on one side and dividend declarations on common stock thereafter on the other side, thus the dealings lacked the essential element of being continuous, open or current. In the grocery account, prior to 1937, the relationship between the parties was that of purchaser-debtor and seller-creditor, while in the dividend declarations, it was that of shareholder and dividend-declaring corporation. These accounts then did not arise between decedent and claimant in their dealings with each other "in the same capacity or relation".

Likewise, the dividend declarations are not such payments by decedent on the book account as to create thereby mutual accounts. ". . . a credit to have the effect of taking an account out of the operation of the statute must be proved to have been intended as a payment on the account": Mattern v. McDivitt, supra, at 410. In Bell v. Collins, 37 D. & C. 533, it was held that dividends applied from stock held as collateral to a note more than six years old and on which nothing was paid by maker were not such payments as would toll the statute. In Dick v. Daylight Garage, Inc., 335 Pa. 224, suit was brought after the statutory period had run against the note debt; plaintiff there sought to recover on evidence that payments were made by mortgagors on a mortgage given as collateral to a note, which payments were credited against the note. The court said, at page 227, the debtor, ". . . did nothing acknowledging its continued liability. 'A payment to toll the Statute of Limitations, must be made or authorized by the debtor: (cases cited).'"

The evidence in the instant case is clear that decedent had nothing whatsoever to do with dividend declarations or their use by claimant. The dividends are not payments "made or authorized" by decedent and "intended as a payment on the account" (of 1937) and

do not here constitute such payment as would toll the statute of limitations. Were we to hold otherwise the effect would be that ownership of a single share of stock with a provision such as the certificate here, contained would constitute a perpetual toll of the statute if a nominal dividend were declared at least once in each six years. Such a result would be contrary to the mandate and purpose of the statute. In Huffman Estate (No. 3), 349 Pa. 59, 63, it is stated: "The creditor, who allows his simple contract debts to run on, overdue, for more than six years, must charge their loss to his own negligence; . . . Statutes of Limitation are intended to promote promptness and punctuality in business; the settlement of claims while parties are alive; before papers are lost and witnesses die; and he who will not take the hint, must take the consequences."

Claimant's other principal contention is that the statute of limitations was tolled by decedent's oral acknowledgment and promise to pay the debt. To establish this position claimant called one of its salesmen (Oakes) who testified that in 1952 while calling on another customer, he met in that grocery establishment, decedent, then 78 years of age and unemployed since 1948. His testimony on direct examination as to his conversation with decedent is:

"Q. Can you tell us what the conversation was? A. Well, I have known Mr. Schwarz for quite some while, and we passed the time of day, and I asked him how he was, and I approached him on the account then, and he told me that as soon as he was financially able he would pay that account. Q. Did you discuss with him the balance that was due and owing? A. At that time I didn't have a statement, and so that was not discussed. Q. What was the amount—did you know that? A. It was in the neighborhood of twenty-five hundred, I should say—I couldn't say exactly. Q. What did Mr. Schwarz say about whether or not that account was

due and owing, can you give his exact words? A. He told me that he owed the account and he said that he would settle it in full."

Claimant contends that the testimony of its former salesman (Hubbell, offered by the estate) corroborates claimant's position. This witness testified that in either 1950 or 1951 while calling on another grocery account he met decedent in that customer's store. His testimony on direct examination is: "Q. In your conversation with Mr. Schwarz, did you ask him about this account that he owed the Wholesale Grocery? A. As I recall it, I said, 'Well Matt, what about the old account?' and he said 'Charlie, you know the old story,' and that was the end of it with me. Q. Did he say anything further at that time? A. No, he did not. He didn't commit himself one way or another. He said, 'You know the old story.'"

And, his testimony on cross examination: "Q. You had sold groceries to Mr. Schwarz, Mr. Hubbell, while you worked for Erie Wholesale? A. Yes, I took his orders. Q. You were aware that he had a bill and there was a balance due and owing to the Erie Wholesale Grocery? A. Yes. Q. Do you have at this time a recollection of how much he owed the Erie Wholesale Grocery? A. I do not remember that part of it. Q. Would you say that from your recollection that the amount owing would have been as high as $2,000? A. I couldn't say. . . . Q. Do you have any recollection of his account being changed from credit to cash or to cash on delivery? A. It was cash on delivery at the time I called on him. Q. But was a balance due and owing the company? A. There evidently was because it would not have been on a C. O. D. account. That would have been the reason for it. Q. Since you sold him groceries, his account was handled by you so long as you were physically able? A. Yes, all I handled was the orders which I took. I had nothing to do with his old account.

Q. Were you asked to collect his old account? A. No, I wasn't because that had been long standing and it was given to me on a C. O. D. basis. . . . Q. He admitted he owed a sum of money? A. Yes, but there is a story back of that. Why and how it was contracted. Q. But regardless of how it was contracted, he admitted it. A. Yes, there was the old story."

In Maniatakis' Estate, 258 Pa. 11, 15, the court said: "A clear, distinct and unequivocal acknowledgment of a debt as an existing obligation, such as is consistent with a promise to pay, is sufficient to toll the statute: . . . There must, however, be no uncertainty either in the acknowledgment or in the identification of the debt: . . . and the acknowledgment must be plainly referable to the very debt upon which the action is based: . . . and also must be consistent with a promise to pay on demand and not accompanied by other expressions indicating a mere willingness to pay at a future time: . . . A simple declaration of an intention to discharge an obligation is not the equivalent of a promise to pay, but is more in the nature of a desire to do so, from which there is no implication of a promise." It is well established that these essential requirements are strictly applied. " 'The decisions of this court apply very strict rules to acknowledgments to take a case out of the Statute of Limitations, and very rightly so. We mean to adhere to them in letter and spirit' ": Schaffer v. Hoffman, 113 Pa. 1, 5.

The evidence claimant relies upon to establish decedent's acknowledgment of the debt and promise to pay must be viewed in the light of the foregoing authorities and the attending circumstances here present. The book account was first recoverable in 1937 and claimant took no action within the statutory period to collect the demandable debt. From 1937 until 1948 claimant dealt with decedent on a C. O. D. basis and without reference to the earlier book account. In 1952, more than nine

years after the statute had barred the 1937 book account, claimant's salesman, while calling on another customer, met decedent, then 78 years of age and retired from business since 1948, and in that conversation decedent stated that "as soon as he was financially able he would pay . . . he would settle in full." The amount of the debt, then 15 years old, was not stated, mentioned or referred to in the conversation. We are of the opinion that claimant's evidence fails to sustain under these circumstances its burden of proving "a clear and unequivocal acknowledgment" by decedent of the debt now sought to be charged to his estate. Decedent's declarations are at most merely expressions of willingness or desire to pay at some indefinite future time and are therefore not sufficient under the prevailing authorities to remove the bar of the statute of limitations: Shaffer's Estate, 228 Pa. 36; Anthracite Trust Co. v. Loughran, 341 Pa. 142.

The evidence fails also to meet the required standards for the specification of the amount of the debt: Markee v. Reyburn, 258 Pa. 277. "Promises to pay and acknowledgments of indebtedness, to take a claim out of the Statute of Limitations, must be explicit in their terms, and unambiguous, both as to the engagement or acknowledgment, as also to the sum of money intended to be paid or acknowledged: . . .": Webster's Executors v. Newbold, 41 Pa. 482, 492.*

Careful review of the record convinces us that claimant's evidence is insufficient to support its contentions and fails to meet the standard of proof required by the ruling authorities to take this case out of

---

* Historically interesting suit by executors of estate of Daniel Webster to recover contingent counsel fees for legal services which resulted in favorable decision sustaining position he advocated; action brought more than six years after payment by clients to counsel who retained Daniel Webster. Held, recovery barred by statute of limitations.

the operation of the statute of limitations. Accordingly we enter the following:

### Order

And now, to wit, November 15, 1957, it is ordered, adjudged and decreed as follows:

1. The claim of The Erie Wholesale Grocery Company is barred by the statute of limitations and is not recoverable and is therefore disallowed.

2. An adjudication and decree will be entered in accordance with this opinion.